Judge Crenshaw
delivered the opinion of the Court.
The plaintiff, Josiah Martin, in his petition, alleges substantially, that his land had been'sold by virtue of a decree of Court, and that John Draffin had become the purchaser, at a sale made under the decree, for the sum of $87 80; that the purchase had been made at a sum greatly below the value of the land; and that his brother, Edward, having heard of the sale, applied to him, the plaintiff, “to let him have the money, and stated that he would pay it to Draffin and get his transfer, and would take the land and hold it, and tend it for the interest on the amount that he should have to pay for him, until the plaintiff could pay the money back; that he had better do this than to let it stand as it was; that Draffin would, if he could, hold the land, which was worth four times what Draffin had paid for it.” The plaintiff further alleges, in substance, that he told his brother, Edward, that Draffin had said repeatedly, that be had bought the land for the plaintiff, and that all he wanted was Ms money; that he wanted to make nothing out of the plaintiff; that he had indulged him, and still intended to do so; that it was finally agreed between him and his brother, that his brother should see Draffin and pay him the money, and take the land and hold it for him in the same way in which Draffin had held it, except that his brother was to culth ate the land for the use of the money, until it should be paid back to him. Edward Martin afterwards applied to Draffin for the land, and, in the interview between them, Draffin informed him that he had purchased the land for his brother, the plaintiff, and had told him so, and that the plaintiff had agreed to raise the money which had been bid for the land, and take it. Drafiin also informed Edward that, if the plaintiff was to have the land, Edward could take it — that he- *12 had bought the land for the plaintiff, and his object was for him to have it. Edward replied to Draffin that he would take his (Draffin’s) place, and that, when the plaintiff could pay him back the money, he should have the land; and, upon this understanding, as Draffin says, he transferred to Edward the benefit of his bid. Edward afterwards applied to court, and by virtue of this transfer, the court directed the commissioner, who had made the sale, to convey the land to Edward, and it was conveyed to him accordingly.
The defendant, in his answer, does not deny the foregoing facts stated by the plaintiff, but sets out the agreement somewhat variant in this: that the plaintiff was to have only five years in which to pay the sum ($87 80) advanced by the defendant to Draffin for the land ; and relies that, the agreement having been made about the year, 1845, the time of redemption had expired about the year, 1850, and no offer had been made to pay the money until about the first of January, 1853. He relies also upon the statute of frauds and perjuries; and this latter defense constitutes the only difficulty in the way of the plaintiff to relief. As to the lapse of time,'it is questionable whether five years were fixed upon in the agreement, as the time which the plaintiff should have to redeem in. Draffin says that, in the interview between him and Edward, no time was mentioned as a limit on the right of the plaintiff to redeem. After the agreement had been made between the plaintiff and the defendant upon the subject of the land, and after the defendant had procured the transfer from Draffin, as it appears from the testimony of Long, the defendant, in a conversation with the plaintiff, told the plaintiff that he would give him five years to redeem, to which the plaintiff does not appear to have made any reply. Cleaveland proves that the defendant, in speaking of the transaction, remarked that he had given the plaintiff five years to redeem in. But, there is nothing to show that this *13 period had been fixed upon in the original agreement, except the declarations of the defendant, and the silence of the plaintiff when one of these declarations was made, and this silence was on the occasion when the defendant said he would give five years to redeem in, and was not when the original agreement was made. But, under the view which we' have taken of this case, it is not material whether this period of five years was the limit fixed in the original agreement to the right of redemption or not. The time of redemption, according to the declarations of the defendant, as proved by Cleaveland, was extended for five years lenger, and before the expiration of this latter period this suit was brought. But, if the land was held by the defendant as a mere security for the money which he had advanced, and there was a legal right to redeem, the time would not be material.
It is stated by the plaintiff that, at the time when the defendant applied to him and offered to advance the money to Draffin, he was anxious to pay off the’ debt to Draffin of $87 80, and he was, doubtless, anxious upon the subject; for, the said sum of $87 80 was but about one fourth the value of the land, at that time, as is manifested by the testimony; and we think the probability is, that he would have raised the means from some other source than from the defendant, to redeem the land, had not the defendant offered to advance the money. By his interposition, he prevented the plaintiff from looking to any other source for aid in his embarrassment, and procured Draffin’s transfer, and now insists upon holding the land to the great sacrifice of the interests of the plaintiff. To permit him to do so, would operate a hardship upon the plaintiff, and allow the defendant to take advantage of his own wrong, and thereby enrich himself at the expense of the plaintiff. This ought not, and cannot be suffered, unless the statute of frauds interposes an insurmountable obstacle.
At the time oí the arrangement between the par *14 ties for the redemption of the land from Draffin, he held it in trust for the plaintiff, having purchashed it for him, as appears from his own statements and conduct. True, the trust was not an enforeible one, but, it was a trust in fact, which he was willing to fulfill, and which, in consequence of the representations made to him by the defendant, he thought he toas fulfilling, in making to the defendant the transfer. The fact that the trust in the hands of Draffin did not constitute ail enforeible equity, at the time of his transfer to defendant, is the only thing which distinguishes this case, in principle, from that of Griffin and wife vs. Coffee, reported in 9 B. Monroe, 452. In that case property had been sold under execution, which was subject to be redeemed by the debtor, and the sheriff made a deed to the purchaser. On the last day for the redemption of the property, and whilst an execution was in the hands of the sheriff, for the purpose of being levied upon the equity of redemption, to realize the remainder of the debt not made under the first execution and sale, Coffee paid to the creditor, who was the purchaser under the first execution, the full amount of his whole debt, and took from the creditor a conveyance of the property. This Court, being satisfied that the redemption and purchase of the property by Coffee, had been made at the instance of the debtor, and in trust for him, was of. opinion that the debtor had a right to reclaim the property, upon Coffee’s being paid what he kad expended for it, and that the statute of frauds did not constitute a bar to relief. In that case, Coffee acquired-a conveyance for the property whilst it was, by law, subject to redemption. In this case, the property was acquired by the defendant, when the plaintiff:’ had no right or power, in law, to redeem or repurchase, but Draffin bought the property for the plaintiff, and was, in fact, holding it in trust for him, and the right to redeem being conceded, he could as effectually have obtained it, as if, by law, he could have eniorced its surrender. He was as effectually *15 lulled into repose, and his exertions to make a personal redemption from Draffin were as certainly prevented by the arrangement with the defendant, as was the debtor by the arrangement with Coffee prevented from a redemption in person, in the case quoted from 9 B. Monroe. In this case, as in that, to apply the statute of frauds as a barrier to relief, would be to make the statute an instrument for the perpetration, instead of the prevention, of frauds. We think the plaintiff was entitled to relief.
A purchaser of laud uader a decree made the purchase for about one third of the value of the land, and holding the land under assurance of the purchaser by parol, made to the debtor, that he might redeem, sold the benefit of his purchase to a 3rd person, who promised the debtor and pur chaser to extend the privilege of redemption to the debtor; held that though the agreement was by parol that it was a trust which the purchaser could not refuse to perform and redemption allowed.
*15 Upon the return of the cause, if the plaintiff should bring the amount of money without interest into court for the defendant, which was advanced by the defendant to Draffin, it should be ordered to be paid to the defendant, and he should be directed to convey the land to the plaintiff, which conveyance and p'ayment should be concurrently performed. If the' plaintiff fail to bring the money into court, the land, or so much thereof as will be sufficient for the purpose, should be directed to be sold to raise the sum advanced by the defendant to Draffin. And, such other orders should be made as will comport with the principles of equity.
Wherefore, the judgment is reversed, and the cause remanded for further proceedings and decree, in conformity to the principles of this opinion.