## Chappell, et al. v. Hensley.

(Decided January 25, 1927.)

### Appeal from Leslie Circuit Court.

1. Judgment—Refusal to Set Aside Judgment Held Not Adjudication that Grantee of Purchaser of Land Sold Thereunder Took Title Only as Security for Debt.—Judgment refusing to set aside judgment, under which land sued for was sold to defendant's grantor, held not a prior adjudication of question whether defendant took title only as security for debt.

2. Trusts—Purchaser's Oral Agreement to Take Title for Third Person and Convey Land to Him on Payment of Agreed Sum Created Resulting Trust Not Within Statute of Frauds.—Purchaser's oral agreement to hold title to land for the benefit of another and convey it to latter on payment of an agreed sum held to create a resulting trust not within the statute of frauds.

3. Trusts—Resulting Trust May be Created by Parol.—A resulting trust may be created by parol.

4. Trusts—Evidence Held to Show that Defendant Held Title to Land in Trust for Plaintiff.—In action for land conveyed to defendant by purchaser at judicial sale, evidence held to show that defend-

ant held title in trust for plaintiff, so as to require reconveyance
on reimbursement of amount of judgment, with interest.

C. W. HOSKINS for appellant.

J. M. MUNCY for appellee.

Opinion of the Court by Judge Logan—Reversing.

In 1902 Reuben Chappell, the father of John Chappell, conveyed to his son, John, a tract of land in Leslie county, reserving to himself a life estate. In the year 1907, Reuben Chappell instituted a suit in the Leslie circuit court seeking to cancel the deed which he had executed to his son. The defendant in that action, John Chappell, employed Cleon K. Calvert as his attorney to represent him in the case. The lower court appears to have adjudged that Reuben Chappell was the owner of the tract of land absolutely during his life, and the defendant appealed to this court from the judgment. The case was reversed, and it was held by this court that Reuben Chappell had only the right to live on said tract of land and use it for farming purposes and that he had no right to the timber or minerals except such as were necessary for his comfort or to maintain him during his life. In the latter part of 1916, Cleon K. Calvert instituted suit in the Leslie circuit court against John Chappell seeking to recover judgment against him for $150.00, with interest thereon, for his services in the above mentioned suit. He also claimed a lien for the security of his debt against the land, the title to which had been involved in the litigation. In June, 1917, the defendant, John Chappell, having been summoned and failing to answer, a default judgment was rendered against him for $150.00, with interest thereon from February 26, 1908, and the cost of the action. It was also adjudged that Calvert had a lien on the tract of land for the security of his judgment, and it was ordered that the lien be enforced and the land sold. The master commissioner made the sale on the 17th day of September, 1917, and he made his report of sale to the Leslie circuit court on February 22, 1918. His report of sale shows that he caused the property which he sold to be appraised and that it was appraised at $4.00 per acre. Reuben Chappell purchased the land, or the interest of John Chappell in the land, for $291.02. At the time of the sale H. M. Hensley, the appellee herein, was the owner of the judgment which had been rendered in favor

of Cleon K. Calvert. It was transferred and assigned to him on the margin of the order book on the 14th day of September, 1917, which was three days before the sale. Thereafter on the 20th day of October, 1917, Reuben Chappell signed a paper which is as follows:

"State of Kentucky }
County of Leslie } sct.

"Reuben Chappell, having purchased the tract of land referred to in this report of sale and the tract of land described in the judgment in the case of Cleon K. Calvert against John Chappell, sold by orders and judgments of this court, on Monday, September 17th, 1917, now by this writing sells and transfers his said property for a valuable consideration to Henry M. Hensley.

"In testimony thereof, witness my hand this the 20th day of October, 1917.

his<br>
"Reuben x Chappell.<br>
mark

"Witness: M. C. Begley, L. D. Lewis."

"State of Kentucky }
County of Leslie } sct.

"I, M. C. Begley, a notary public in and for the county and state aforesaid, do hereby certify that on this day Reuben Chappell presented the foregoing writing, transfer, of his bids to the land herein described, to Henry M. Hensley, and acknowledged the same to be his act and deed in due form of law.

"Given under my hand this the 20th day of October, 1917.

"M. C. Begley,<br>
Notary Public Leslie Co., Ky.

"My commission expires March 8, 1920."

On the 23rd day of February, 1918, H. M. Hensley, as assignee of Reuben Chappell, moved that the Leslie circuit court direct the master commissioner to execute to him a deed of conveyance for the property which had been sold, and the court sustained his motion and directed the master commissioner to execute a deed to Hensley conveying to him all the rights, title and interest, legal and equitable, of the defendant, John Chappell, in said

property. The deed was executed accordingly and a writ of possession was awarded in favor of Hensley, to be issued, however, upon the death of Reuben Chappell.

It appears that John Chappell, through his attorney, John L. Dixon, at the February term, 1918, of the Leslie circuit court filed exceptions to the report of sale. The ground of his exceptions was that the judgment rendered in favor of Cleon K. Calvert was void and that no sale should have been made thereunder. At the same time he filed a motion to vacate the judgment on the same ground. The court overruled his exceptions and his motion and gave as the reasons therefor that the judgment could not be attacked by filing objections to the report of sale and that the judgment could not be vacated on a motion made after the term at which it was rendered.

On the 4th day of June, 1918, John Chappell instituted suit in the Leslie circuit court under provisions of section 518 of the Civil Code, in which he sought to have the judgment entered in favor of Calvert vacated and set aside. It is unnecessary to set out the grounds upon which he relied, as the court denied him the relief which he sought after hearing, and no appeal was taken from that judgment.

Matters thus stood until July 7, 1923, when Reuben Chappell and John Chappell instituted this action against H. M. Hensley. The basis of the action is that John Chappel procured his father, Reuben Chappell, to purchase the land at the sale made in 1917 for him, and that after making the purchase for John Chappell the said Reuben Chappell approached appellee, Hensley, and asked him for a loan of $291.02, the amount required to satisfy the purchase price for said land; that appellee proposed to make the loan provided Reuben Chappell would assign his bid to him for security of the money and would cause a deed to be executed to him of the force and effect of a mortgage; that said arrangements were made and that appellee accepted title with the understanding and agreement between him and Reuben Chappell that when John Chappell should pay the purchase money, with interest thereon, that Hensley would convey the title to him; that Hensley held the title until June, 1921, when John Chappell was ready to discharge the debt, and at that time he tendered the amount of the debt with interest, when Hensley refused to accept it and claimed the land as his own. Hensley filed his answer in which he traversed all the material allegations of the petition. He

pleads affirmatively that the exceptions to the report of sale, the motion to set aside the judgment in the Calvert case and the proceedings thereafter had to set aside the judgment constituted a bar to the right of the Chappells to maintain the action.

The lower court dismissed the petition and adjudged that appellee was the owner of the land. Reuben Chappell is dead and John Chappell is here complaining of the judgment of the lower court.

Reuben Chappell gave his deposition on the 15th day of October, 1924, in which he tells of the transaction leading up to the transfer of his bid to appellee. He states that he purchased the land at his son's request; that he tried to borrow the money to pay the purchase price from Henry Holland, but failing to get it there he went to the appellee, Hensley, who was his nephew by marriage, and that Hensley agreed to pay over the purchase price and give John Chappell all the time he wanted to repay the money, with interest. This agreement was made in Hyden on the street and that he and appellee then went to an office where the assignment was prepared and executed. The witness states that he put the land in appellee's care for security for his money until John Chappell worked the money out; that nothing was paid him by Hensley for the assignment; that the land was worth $3,000.00 at the time it was sold in 1917, and contained 180 some odd acres. At the time Reuben Chappell gave his deposition he was confined to his bed with illness. On cross-examination he states that he bid the land in so that he might get it for his son, John, and that he bid it in in his own name because he did not know any law.

John Chappell testified in the case. The only testimony given by him on his direct examination which is competent or material is that he requested his father to purchase the land for him, and that he thereafter requested his father to borrow the money to pay the purchase price. He also testified that he had put up with the circuit clerk $325.00 to pay the amount due appellee, and that he is willing to pay the amount of the judgment, plus interest. He also testified that the land was worth $4,000.00 at the time it was sold. On cross-examination, however, he was asked about how he obtained information that the land was to be sold in 1917, and he stated that he received a letter from his father giving him that information, and, further, that his father wrote him the

date of the sale, and that he wrote his father to attend and purchase the land for him.

John H. Asher, the circuit clerk, testified that he offered the money to Hensley after it was left with him by John Chappell and that Hensley refused it. He and a number of others testified that the land was worth $15.00 or $20.00 an acre when it was sold in 1917, and that it was worth $6,000.00 at the present time.

Appellee testifies in his own behalf and gives his version of the transaction with Reuben Chappell when the bid was assigned to him. He says all the conversation was in the office of M. C. Begley, and that Mr. Chappell said to him or said to Begley in his presence that he was not able to pay the amount that he had bid, and on account of the way his family had treated him he would turn the land over to appellee. After making the statement Mr. Begley prepared the assignment, which was signed by Chappell and witnessed by L. D. Lewis and M. C. Begley. He says that Reuben Chappell made the statement that he would rather appellee would have the land than for his son, John, to have it. He denies that he met Reuben Chappell on the streets of Hyden. He denies that he made any agreement that he would give John Chappell time to pay the debt or that he agreed that he would hold the title for John Chappell or that he would execute a deed to him upon the payment of the purchase price with interest. He says that it was his understanding that the relation between Reuben Chappell and his son, John, at the time was not pleasant, but this is denied by both John Chappell and Reuben Chappell. John L. Dixon, attorney for John Chappell at that time, had testified that he talked with appellee just after the assignment had been made, and that appellee told him that he and Reuben Chappell had an agreement or understanding about the transaction. This is denied by appellee. Appellee places the value of the land at $5.00 or $6.00 an acre, but admits that it is worth much more than he paid for it. The deposition of L. D. Lewis was taken by plaintiff, but he has no recollection of anything that took place at the time he witnessed the assignment. M. C. Begley also testified, but could not remember anything that was said at the time of the assignment. J. M. Muncy, attorney for appellee, testified at some length, giving a history of the previous litigation. He also testified as to the advice he gave Reuben Chappell about purchasing the

land at the sale.  He says that he advised Reuben Chappell to bid the land in so that he could get the entire title back in himself.  He also says that Reuben Chappell knew that H. M. Hensley had purchased the judgment in favor of Calvert, and that he advised him that he could assign his bid to Hensley and that Hensley could release him from any liability that would be against him by reason of the bid.  He also states that Reuben Chappell did not say anything about buying the land for his son, John, but he wanted to buy it for himself.

The witnesses agree that the price paid by appellee, if it was an outright purchase, was a very small proportion of the real value of the land at the time he acquired the interest.  This of itself, however, can make no difference if the transaction was as claimed by appellee.

It is strongly urged by counsel for appellee that the plea of former adjudication offered by appellee should have been sustained.  With this view we cannot agree. It is true that appellant sought to have the judgment rendered in favor of Calvert set aside, but we are unable to see how that affects the question as to whether appellee took title to the land with the simultaneous understanding that he would hold it only as security for the debt. It may be that appellant thought if he could have it adjudged that Calvert had no lien on the land then he could take his own time about paying the judgment.

It is next argued by appellee that if there was any such agreement as is claimed by the appellant it is within the statute of frauds and is therefore void.  An examination of the authorities shows that such is not the law. It is the established law in this state that a resulting trust may be created by parol, and it has been held in a number of cases particularly relating to decretal sales that where the purchaser takes title with the understanding that he will hold title for the benefit of another and will convey the land to such other upon the payment of an agreed sum, a resulting trust exists in favor of such other person. Among the cases holding that a resulting trust may be created by parol and that the statute of frauds has no application, we cite the following: Martin v. Martin, 55 Ky. 8; Miller's Heirs v. Antle, 65 Ky. 407; Green v. Ball, 67 Ky. 586; Williams v. Williams, 71 Ky. 241; Fishback v. Green, 87 Ky. 107; Parker v. Catron, 120 Ky. 145; Hobbs v. Rowland, 136 Ky. 197; Vaughn v. Smith, 148

Ky. 531; Shortridge v. Shortridge, 207 Ky. 790; Huff v. Byers, 209 Ky. 375.

Under the authorities there can be no doubt that the appellee held the title to this land for the use and benefit of John Chappell if the evidence of Reuben Chappell is true. The greatest difficulty we have with this case is the evidence. The assignment of the bid is absolute on its face. It was made with great care and on its face it purports to be an assignment of the entire interest of Reuben Chappell in the land. In the assignment itself no reference seems to have been made to the bid, but in the acknowledgment which was taken by M. C. Begley, a notary, it is set out that the instrument is an assignment of a bid. The paper signed by Reuben Chappell recites that he had purchased the tract of land referred to in the report of sale in the case of Calvert against John Chappell, and that by the writing which he was executing he was transferring his said property for a valuable consideration to Henry M. Hensley.

Three days prior to the sale Calvert assigned his judgment to appellee. No reason is given by appellee why he purchased this judgment, and he declined to state whether he paid the full amount for the judgment, and the presumption is, therefore, that he did not pay the amount called for in the judgment to Calvert. Appellee stated that Calvert was satisfied. No one states that Reuben Chappell knew that appellee had purchased the judgment at the time he made the assignment to him except the witness, J. M. Muncy, who appears also to be attorney for appellee. It is true appellee said he thought Reuben Chappell knew that he was the owner of the judgment, and it may be that he had reached that conclusion from information given to him by his attorney. The witness, Muncy, says that Reuben Chappell came to him seeking advice as to how he could get rid of the liability for the purchase money, and, strange as it may seem, the witness suggested to him that he could turn the matter over to the appellee, that is, he could transfer his bid to appellee and be relieved of the responsibility. If Reuben Chappell turned this tract of land over to appellee according to the advice of this attorney he was relieved of all liability on the bond and he also was relieved of the land. However, it does not appear that he was advised on the particular point that he would be relieved of the land.

Hensley was the nephew by marriage of Reuben Chappell, and it was natural that the old man should go to him in his day of trouble. It also appears from the evidence that appellee is a business man of ability. His testimony does not satisfy the court that the transaction was entirely open and above board. Appellee says that when the money was offered to him by John Chappell that he declined to take it and said that he would not do so unless the courts required him to accept the money. He gives as a reason why he accepted the transfer from old man Chappell that he was the owner of the judgment and that he preferred to have money in his own pocket instead of the pocket of some one else. It may be that Reuben Chappel, old and ignorant as he was as shown by this proof, did not make clear what he had in mind, but we have reached the conclusion that it was his purpose to save the land for his son, John, and that when he went to appellee he had that purpose in mind. No satisfactory reason is offered to show why Reuben Chappell should desire to sell this land to appellee for such a small percentage of its real value. If he had known that he was parting absolutely with his title and that he was depriving his son of the property doubtless he would have obtained the money from another or would have made other arrangements. The preponderance of the proof shows that the interest of John Chappell in this land was worth from $1,500.00 to $3,000.00 at the time of the sale and that the land is worth $6,000.00 now. Taking into consideration all the facts and circumstances surrounding the transaction, we have reached the conclusion that appellee holds title to this property in trust for John Chappell. Reuben Chappell was the agent of John Chappell in making the arrangements and in bidding in the land. No harm can come to anyone by refunding to appellee the amount of the judgment he has paid out, with interest thereon. The judgment was $291.02, and he does not even claim that he invested that much in it. There is no claim that he made any improvements on the property since the death of Reuben Chappell or since the bid was transferred to him. John Chappell should be required to pay into court $291.02, with interest thereon from the 14th day of September, 1917, and when this is done it should be paid to appellee, and then appellee should execute a deed conveying the land in controversy to John Chappell, or if appellee should refuse to execute the deed

the court, by proper orders, should direct the master commissioner to convey to John Chappell the property.

The judgment of the lower court is reversed, with directions to proceed in accordance with this opinion.