## Belcher et al. v. Belcher's Administrator.

(Decided February 5, 1929.)

666

F. W. STOWERS and SAM C. STOWERS for appellants.

STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

G. W. Belcher of Pike county was the father of seven children by his first wife, who died in 1892. He married again a year or two later, and, by his second wife, he had nine children. He was a prosperous citizen, and was the owner of much real estate.

Soon after his second marriage he began to make advancements in land to his older children. That is, from time to time, he conveyed to his children by his first wife farms. The second Mrs. Belcher, Augusta by name, after some of these deeds had been executed, demurred to signing· others. She was afraid that there would not be enough land to go around, and that her children might be left out. G. W. Belcher executed to her a deed of conveyance in 1911 for 400 acres of land known as the "home place" for the recited consideration of $1,000. After the death of Mrs. Belcher and her husband, some question was made as to whether Mrs. Belcher was the owner in fee of the home place, or whether she held it as trustee for the children who had not received an advancement in land from G. W. Belcher.

The testimony shows that the deed was executed after Mrs. Belcher had declined, or expressed an unwillingness, to sign the deeds which her husband had executed to the children by his first wife. There is testimony

tending to establish that the home place was conveyed to Mrs. Belcher so that she might be assured that her children would be cared for in the division of the property. Mrs. Belcher did not consider the land as belonging to her, according to the testimony of many of the witnesses. It is clearly shown that prior to the death of G. W. Belcher and his wife they had assigned to each of the children, both the children by his first wife and by his last, a portion of the real estate holdings. Deeds were duly executed to the greater number of them, but in some cases no deed was executed, although the portion of the land which the child was to have was assigned and designated to the particular child. In some instances the child took possession of the land so assigned and designated, and was in possession of it at the time of the death of Mr. and Mrs. Belcher. All of the children by the first wife received their portions entirely outside of the home place, and four of the children of the second wife received their portions outside of the home place, and five of the last children received their portions within the home place. After a portion was assigned to one of the children, the land so assigned was sold for $2,000, and the money received from the sale was held as the property of that particular child who at the time was an infant.

When G. W. Belcher conveyed this property to his wife he reserved complete control of it during his lifetime. The evidence is clear and convincing that it was the intention and purpose of G. W. Belcher and Augusta Belcher to divide the landed estate among all of the children of G. W. Belcher in shares of substantially equal value. If the 400-acre home tract was the separate property of Mrs. Belcher at the time of her death, it descended to her children, and the seven children by the first wife took no interest in it, and those who had been assigned their portion out of the land which descended to them would have just cause to complain, and the others could be made to account for that which they had received as an advancement. This would upset the entire plan as worked out by Mr. and Mrs. Belcher.

The administrator, who has in his hands several thousand dollars arising from the personal estate of G. W. Belcher (Mrs. Belcher left no personal estate), insists that he cannot make distribution of that which he has until he is advised whether the children who received their portion of the land out of the home place are entitled to be made equal with those who received advancements outside of the home place. He treats the matter

.as if the five who were assigned portions out of the home place received only that which was already theirs, and he insists that the question must be determined before he can make distribution of the money he has on hand. He further attempts to make the question that the children by the first wife received a more valuable portion of the land than the children by the second wife. There is proof which tends to show that Mrs. Belcher bought the home place and paid for it out of her own money, while there is proof which tends to show that she did not pay anything. It is shown that she sold her interest in her father's estate for $3,000 with the expressed purpose of buying the home place from her husband. Taking into consideration all the facts and circumstances, the proof convinces us that Mrs. Belcher held the home place in trust for the children, and for a division among the children in accordance with the understanding between her and her husband that his landed estate should be divided among all of his children. We have reached this conclusion from a consideration of the cases of Skinner et al. v. Rasche et al., 165 Ky. 113, 176 S. W. 942; Becker et al. v. Neurath et al., 149 Ky. 421, 149 S. W. 857; Woolfolk et al. v. Earl et al., 40 S. W. 247, 19 Ky. Law Rep. 343; Rudd et al. v. Gates et al., 191 Ky. 456, 230 S. W. 906; Newton v. Newton's Adm'r, 214 Ky. 278, 283 S. W. 83; Pendleton v. Patrick, 57 S. W. 464, 22 Ky. Law Rep. 378; Brook's Ex'r v. Strange et al., 147 Ky. 503, 144 S. W. 747; Chapman's Ex'r et al. v. Chapman, 152 Ky. 344, 153 S. W. 434; Chappell et al. v. Hensley, 217 Ky. 749, 290 S. W. 705.

The proof is conflicting, as it relates to the value of the property conveyed to the respective children. This is brought about because of changed conditions that came after the conveyance of some of the tracts of land to some of the children. The first was conveyed about 1894, and the last division was made as late as 1921. Taking the evidence as a whole, it appears that those who were assigned portions out of the home place will probably receive a greater value than some of the others, and that portion assigned to those who are infants is probably of greater value than the portion assigned to the first children, and the infants cannot be prejudiced if it is adjudged that the division made among the children shall not be disturbed.

The administrator instituted suit seeking to have the estates of both G. W. Belcher and Augusta Belcher set-

tled and the lands belonging to them at the time of their death partitioned by commissioners. The sixteen children were made defendants in the action. They filed an answer and counterclaim, in which they prayed that the administrator be required to make final settlement of the estate of G. W. Belcher by distribution of the funds in his hands; that it be adjudged that the deed executed to Augusta Belcher placed the title to the home place in her in trust for the purpose of its division among the children; that it be adjudged that a division of the lands, as made by G. W. Belcher during his life, was a fair and equal division among the children; that a commissioner be directed to execute deeds of conveyance to those to whom no deed had been executed; that any land undisposed of belonging to the estate of G. W. Belcher should be sold and the proceeds divided among the children.

The defendants not only set up in their answer and counterclaim and their amended answer and counterclaim that they were satisfied with the division as made of the land belonging to G. W. Belcher, but they set out by boundary the particular parcels which had been assigned to those who had not received deeds of conveyance, and prayed that the master commissioner be directed to convey the parcels to the children to whom they had been respectively assigned.

We are thus confronted with a situation where those who received advancements from the estate of the ancestor are insisting that the advancements were fair, equitable, and satisfactory to them, and they desire everything to stand exactly as it was arranged by the ancestor; but the administrator is insisting that the division of the real estate among the children was not fair, equitable, or just. We have said in passing that no injustice was done the infants in the partition by the ancestor. There were no debts left by G. W. Belcher, and, where the ancestor leaves no debts to be paid which require sale of the real estate, the personal representative has no interest whatever in the sale of the land or the division of the proceeds among those entitled thereto. Bayne et al. v. Stratton, 131 Ky. 494, 115 S. W. 728.

So far as the personal representative is concerned, it is his duty to settle the estate of G. W. Belcher and distribute the proceeds in his hands among the children. If he has not collected outstanding accounts, notes, or securities, he should do so if it is necessary to the distribution. The $2,000 with accumulated interest, which is the

proceeds of the sale of land assigned to Opal Belcher, should be paid to her upon her becoming of legal age, or to her guardian if she has one before that time. The master commissioner should be directed to execute deeds of conveyance in accordance with the prayer of the answer and counterclaim, filed by the defendants, who are the children of G. W. Belcher.

A consideration of this record convinces us that the division of the real estate among the heirs was fair to all parties, and there is no intimation in the record that G. W. Belcher, or his wife, Augusta Belcher, attempted to prefer one child above another. Their intention appears to have been to do exact justice to all of them. They knew more about the value of the land than others, and it would be unfortunate and unfair to disturb what was done without doing so under legal compulsion. There is no such compulsion necessary in this case. Not only were Mr. and Mrs. Belcher desirous of doing that which was right by all of the children, but the sixteen children have shown by their conduct and actions that they believed that harmony in the family is to be preferred above a few rough acres of land or a few dollars in money. Their conduct should be an example to many others situated as they are.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.