## Hembree et al. v. Hamilton.

(Decided March 24, 1931.)

HIRAM H. OWENS for appellants.

TUGGLE & TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On July 8, 1927, James Hamilton conveyed to his son, Harve Hamilton, a tract of land in Knox county for the recited consideration of $800 cash. On the death of the grantor, his surviving children and grandchildren, who were the children of his deceased children, alleging that the land was conveyed in trust and on the agreement that the grantee would either reconvey the land to the grantor during his lifetime, or would divide it equally between his heirs after his death, brought this suit to enforce the trust, cancel the deed, and for a sale of the property and an equal division of the proceeds. On final hearing the chancellor denied the relief prayed, and plaintiffs have appealed.

There was evidence by two or three witnesses that before the execution of the deed they heard James Hamilton tell Harve that he would deed him that land if

Harve would deed it back to him whenever he wanted it, and Harve told him, "Yes." There was also evidence that shortly before his death James Hamilton told Harve that he wanted him to go ahead and divide up the land equally, and that Harve nodded his head. On the other hand, Harve, who was called by the plaintiffs and testified as if on cross-examination, first stated that he paid his father for the land. He finally admitted that he had only about $300 and that his father gave him the other $500 about two weeks before the deed was made. Other witnesses deposed that they had heard James Hamilton say that he had deeded the land to Harve, and that Harve had paid him for it.

More pertinent than the above evidence is the fact that it developed on the hearing that a young woman in the neighborhood had given birth to a child and had laid its paternity at the door of James Hamilton. James Hamilton was heard to talk about the woman threatening to law him, and to say that he deeded the land to Harve "to keep that gal from having anything." It further appears that after the conveyance James Hamilton complained of being robbed on two occasions and losing considerable money. Indeed all the circumstances point unerringly to the fact that the deed was made for the purpose of escaping liability on the charge of bastardy. To this end the plan was carefully laid. He gave Harve the money to pay for the land so that he could say that the consideration actually passed. Afterwards he stated to two or three persons that Harve bought the land and paid for it. Then to avoid having to account for the money, he stated that he had been robbed.

It being clear that the deed was made to escape liability for the support of the bastard child, it follows that James Hamilton, if he had lived, could not have enforced the alleged trust or have had the deed canceled, and that his heirs occupy the same position. Hardin v. Johnson, 198 Ky. 187, 248 S. W. 544. But the point is made that the above defense is not available, because estoppel is not pleaded. In denying a recovery on a contract made for a fraudulent purpose, courts of equity do not rely on the doctrine of estoppel. They proceed on the theory that parties to a fraudulent contract have no standing in a court of equity, and, wherever that situation develops, they will be left in the position where they

have placed themselves. Thus in the case of Central Trust & Safe Deposit Co. v. Respass, 112 Ky. 606, 66 S. W. 421, 23 Ky. Law Rep. 1905, 56 L. R. A. 479, 99 Am. St. Rep. 317, Respass sued Sharp's administrator for the settlement of a partnership. The precise character of the business did not appear from the pleadings. The court sustained a recovery as to items growing out of breeding, training, and racing horses, but denied a recovery for items growing out of the business of bookmaking. Here it is sought to enforce a trust on property which was conveyed for a fraudulent purpose. Though not pleaded, that fact is clearly established, and the grantor and grantee are shown to have been in pari delicto. A court of equity will not lend itself to the enforcement of such a trust. It follows that the judgment was proper.

Judgment affirmed.