## Johnson v. Wikstrom et al.

(Decided March 1, 1932.)

STEPHENS & STEELY and T. B. CULTON for appellant.

GEORGE G. BROCK and H. C. CLAY for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

Hubert Johnson complains of a judgment of the Laurel circuit court affixing a trust to his title to land derived by deed from his father. W. D. Johnson had five children, one of whom had died survived by two children. He executed a deed to his only son, Hubert Johnson, by which he conveyed all of his land, consisting of several separate parcels. The consideration expressed in the deed was "love and affection, and for keep and care of the grantor during his natural life." The conveyance contained this clause:

"It is agreed between the party of the first part, W. D. Johnson, and Hubert Johnson of the second part, that W. D. Johnson is to have control of all the property during his life time, and if necessary for him to sell or convey any portion of this property during his life, that the second party agrees to join in the conveyance with the first party."

The title of Hubert Johnson was assailed in an action by his stepmother upon the ground that the deed was designed to defraud her of her marital rights in the property of her deceased husband, and was procured by the grantee as the result of undue influence. It was later established that the stepmother had by a settlement with W. D. Johnson herself relinquished her marital rights in his property [Johnson v. Johnson, 231 Ky. 740,

22 S. W. (2d) 124], and thereupon she voluntarily retired from the contest. It was taken up, however, and carried on by the three sisters of Hubert Johnson, and the two children of his deceased sister, who presented a pleading attacking the deed to Hubert Johnson upon the ground that it had been made without consideration, and had been procured by overreaching and undue influence. By an amended pleading it was alleged:

"These plaintiffs still insist that the deed from W. D. Johnson to his son, Hubert Johnson, was obtained by fraud and misrepresentation as alleged in the fourth paragraph of our cross petition, but they further state that if they are mistaken in this or if the court should find from the evidence that there was no fraud in procuring the deed, and that said W. D. Johnson was not unduly influenced by said Hubert Johnson to make that deed, then they say that such deed was executed and delivered to Hubert Johnson and was acknowledged by him in trust for himself and these plaintiffs and that the legal title to said land was thereby vested in him in trust for himself and these plaintiffs jointly as the heirs at law of said W. D. Johnson, and that by the said deed there was conveyed to Hubert Johnson in trust for each of them the same interest in the above described property as they would have received as heirs at law of said W. D. Johnson had no deed been executed."

The circuit court found that no fraud had been perpetrated upon W. D. Johnson or practiced by Hubert Johnson, but held that the property conveyed by the deed from his father "was taken by Hubert Johnson in trust for all the heirs of W. D. Johnson." The appellant attacks the judgment of the circuit court upon the ground that it is not sustained by sufficient or any evidence, and that the heirs of W. D. Johnson cannot complain of a deed made by their ancestor to defeat a threatened claim for alimony. Passing the question raised by the appellant that the deed was made by W. D. Johnson to defeat a claim for alimony about to be asserted by his wife, which precluded his heirs from obtaining relief from such a transaction [Hembree et al. v. Hamilton, 238 Ky. 215, 37 S. W. (2d) 25], we proceed to a consideration of the facts which the testimony tended to establish.

W. D. Johnson had been married twice, and his children were the offspring of his first marriage. He did not live happily with his second wife, but separated from her and made a property settlement with her in the year 1911. Mrs. Johnson then resided in Missouri for several years, but later returned to Laurel county, became reconciled with her husband, and resumed marital relations with him. In August, 1928, W. D. Johnson left his wife, and took up his home with his son Hubert Johnson. Mrs. Johnson then employed counsel and set up an alimony claim against her husband. W. D. Johnson was well advised by competent counsel, but nevertheless insisted upon conveying his real property to his son, and upon withdrawing from a bank the money he had deposited therein. It is clear that Hubert Johnson exerted no influence upon his father, and did nothing whatever to induce him to make the deed. The finding of the circuit court in that respect conforms to the uncontradicted testimony concerning the transaction. The appellees insist, however, that the evidence supported the finding of the circuit court that the deed was executed to Hubert Johnson in trust for all of the heirs of W. D. Johnson. It is well settled that a trust in real property may be proven by parol, and enforced according to its terms, Farley v. Gibson, 235 Ky. 164, 30 S. W. (2d) 876. But the evidence thereof must be clear, unequivocal, and convincing. Rudd v. Gates, 191 Ky. 456, 230 S. W. 906.

W. D. Johnson sent for his attorneys and a relative upon whom he greatly relied for advice and assistance. One of the attorneys was dead when this case came up, but the other one testified as to the whole transaction. The contemplated lawsuit was discussed, and his client was advised that the wife's claim was precluded by her contract made in 1911. He was further advised that, if the property was actually subject to attachment to secure a claim of his wife, a conveyance of it would be futile. The result of the conference was that the deed was made to Hubert Johnson with the understanding, which was incorporated in the deed, that, if W. D. Johnson thereafter decided to make a deed to anybody else, Hubert Johnson would join in such deed. The old gentleman stated that Hubert had been good to him, had waited on him, and remained with him, and he thought he ought to have a little more than the rest of the children. But he wanted the rest of the children to have something, and to have a

part of the estate. There was no direction or agreement to hold the property in trust, or to convey any portion of it to any one, unless W. D. Johnson should determine to do so, in which event Hubert Johnson agreed to concur and to co-operate. The provision in the deed was designed to express the exact agreement. When the deed was read to W. D. Johnson, he inquired whether the provision as written was full enough to give him the right to divide his property thereafter. He was advised that it was sufficient to take care of his wishes in that respect, and Hubert agreed to join him in any conveyance he decided to make. The testimony of the attorney was fully corroborated by all other persons present at the conference. We find no evidence tending to show any further agreement, except that of Mr. Smith, who testified that on one occasion Hubert Johnson and his wife stated to W. D. Johnson, in substance, that, if anything happened, they would divide up with the children. The statement was made, however, after the acceptance of the deed, and was not sufficient to · overthrow the undisputed agreement under which the deed was made.

W. D. Johnson later, while the alimony suit with his wife was still pending, sent for his attorneys and his trusted relative to bring five blank deeds for the purpose of making deeds to his daughters. One of the attorneys told Hubert that he did not think there should be any change made while the lawsuit was pending, and Hubert communicated that statement to his aunt, who immediately told her brother, W. D. Johnson. When the parties sent for arrived, Mr. Johnson was suffering, and decided that he would not make the deeds that day. He did not give any reason for postponing the matter, except one witness quotes him as saying he had fixed it about as well as it could be fixed. The impression derived from the testimony is that Mr. Johnson intended to make a division of the property among his heirs giving a larger portion to Hubert, but he never determined precisely how the division should be made. He was not prevented from doing so by anything that Hubert did. He was willing to carry out his father's decision. At the last visit of the attorneys, when it was decided to postpone making of the deeds, Hubert stood at the bedside of his father and expressed a willingness to join in any deeds his father might desire to make. There was no agreement that the land should be held except as specified in the deed, and the full extent of the understanding of the

parties was that Hubert Johnson would join his father in any deed he decided to make. The death of the father, without making or requesting any deeds, and without deciding how he desired a division to be made, did not operate to impose a trust upon the title held by Hubert Johnson. It was palpable that the old gentleman did not wish the property to descend according to the statute of descent. He had in mind some plan of division which he left uncompleted.

The action of the court in making an equal division defeated the expressed intention of W. D. Johnson, who always said he intended to give Hubert Johnson the largest share in the estate. But W. D. Johnson procured competent advice, and did precisely what he desired to do in respect to the deed. His plan of future division and distribution of the property was never carried into effect, and it was not put in form to be carried into effect by the court. The whole matter will have to be left where he left it, for in order to create a trust, there must be an agreement to receive and hold the title, and to dispose of it, in accordance with the purposes of the creator of the trust as embodied in the agreement. Becker v. Neurath, 149 Ky. 421, 149 S. W. 857; Chapman's Ex'r v. Chapman, 152 Ky. 345, 153 S. W. 434; Erdman v. Kenney, 159 Ky. 509, 167 S. W. 685; Taylor v. Fox's Ex'rs, 162 Ky. 804, 173 S. W. 154; Belcher v. Belcher's Adm'r, 227 Ky. 665, 13 S. W. (2d) 1019; Shrader's Ex'r v. Shrader, 228 Ky. 374, 15 S. W. (2d) 246, 66 A. L. R. 139; Skinner v. Rasche, 165 Ky. 108, 176 S. W. 942.

Here the sole agreement was to join in any deed the grantor might desire, but the grantor died without designating any division and without directing any deeds to be made.

The judgment is reversed, with directions to enter judgment in accordance with this opinion.