William E. TERRILL, Appellant,

v.

The ESTATE OF Eleanor TERRILL, Appellee.

No. 2005–CA–001669–MR.

Court of Appeals of Kentucky.

Oct. 6, 2006.

Discretionary Review Denied by Supreme Court April 11, 2007.

John L. Cox, Jr., Stanton, KY, for appellant.

Brian N. Thomas, Christopher M. Davis, Winchester, KY, for appellee.

Before BARBER and VANMETER, Judges; EMBERTON,[1] Senior Judge.

## OPINION

**VANMETER, Judge.**

A constructive trust is an equitable remedy imposed by a court when someone comes into possession of property which should belong to someone else. The issue we must address in this case is whether William E. Terrill's frustration in failing to receive his expected inheritance from a paternal uncle and his wife rises to the

level of inequity for which the court will supply such a remedy. We hold that it does not and therefore affirm the summary judgment of the Wolfe Circuit Court.

Jesse I. Terrill and Mae Cable Terrill, husband and wife, had two sons, Osa and Fred. The only grandchild was William, who was born in 1943 to Osa and his wife, Ada. Fred married Eleanor Centers.

In 1966, after estate issues arose in Ada's family, Eleanor, according to William, stated in William's presence that "what comes from the Centers will go back to the Centers, what comes from the Terrills will go back to the Terrills." Approximately ten years later, again according to William, Mae, William's grandmother, told him that her will left her estate in equal shares to Osa, Fred, and him. William alleges, however, that after her death, Fred destroyed Mae's will so that her estate would pass by the laws of intestacy, i.e., one-half each to Fred and Osa as her heirs at law. As a result, Fred and Osa each received $112,000, one-half interest in the Terrill family's Wolfe County farm, and one-half of their parents' Campton residence. William alleges that he did not pursue any remedy at that point because Osa admonished him to keep quiet, telling him that he would eventually get his share and more.

Mae's sister, Mary Cable, died in the mid–1980's, apparently intestate. Among her heirs were Fred and Osa. They each received approximately $21,000 from her estate.

Osa died in 1995, and Ada died in 1998. Fred died in 2000, leaving his entire estate to Eleanor. William alleges that Eleanor then stated that upon her death she wanted him to have Fred's share of the Terrill family farm, and that she would give the

---

1. Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Centers family farm to her family. Eleanor also stated that she planned to give a number of small bequests to her church and friends, and two sizeable bequests to two sisters, with the remainder to be divided between William and two of Eleanor's nieces. William, therefore, assumed that he was included in Eleanor's estate plan.

Prior to her death, Eleanor gave her share of the Terrill family farm to William and his wife. However, when Eleanor died in 2003, William learned that Eleanor had not made any additional bequests to him or his children. William therefore filed a claim against Eleanor's executors for the share of her estate which he claims can be traced to his family, the Terrills and Mary Cable, stating:

> J.I. Terrill, Mae Terrill and Mary Cable family moneys and coins not paid by and not received from decedent, Eleanor K. Terrill. In the sum of $417,766.39 and ninety seven silver dollars dated between 1839 and 1935 (have record of individual dates).

Following the executors' disallowance of the claim, William filed a civil action requesting that a constructive trust be imposed for his benefit. After William's deposition was taken, the circuit court granted the estate's motion for summary judgment and dismissed William's complaint. This appeal followed.

Summary judgment is proper "where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citing *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky.1985)). When ruling upon a summary judgment motion, a trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment," *id.* at 480, to determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. CR 56.03; *Bell v. Louisville Motors, Inc.*, 573 S.W.2d 351, 352 (Ky.App.1978). In reviewing the trial court's order granting summary judgment in these particular circumstances, we "will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705 (Ky.App.2004).

■ As an initial matter, William apparently recognizes that he has no direct claim to a share of his grandmother's estate. The Kentucky Supreme Court has held that "any heir claiming an interest in the personal property of a decedent must assert a claim to enforce those rights within ten years following the death of the decedent[.]" *Wood v. Wingfield*, 816 S.W.2d 899, 904 (Ky.1991). Similarly, any will, whether extant, lost or destroyed, must be presented for probate within ten years of the death of a decedent. 1 James R. Merritt, *Kentucky Practice* §§ 809, 831 (2d ed.1984). In addition to any time limitations, William's testimony that his grandmother told him that he would receive one-third of her estate falls short of proving a lost will. *See Graham v. Fulkerson*, 187 S.W.3d 324, 327 (Ky.App.2005) (holding that "[n]either the due execution nor the contents of an alleged lost will can be established by the mere declarations of the alleged testator") (quoting *Wood v. Wood*, 241 Ky. 506, 44 S.W.2d 539, 540 (1931)).

■ As to William's constructive trust argument, "a constructive trust arises when a person entitled to property is under the equitable duty to convey it to another because he would be unjustly enriched if he were permitted to retain it." *Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky. App.1985) (citing *Becker v. Neurath*, 149 Ky. 421, 149 S.W. 857 (1912)). Furthermore, an "injured party is not required to

show actual fraud to support a constructive trust." *Kaplon,* 690 S.W.2d at 763. Constructive trusts are "raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Id.* (quoting *Hull v. Simon,* 278 Ky. 442, 449, 128 S.W.2d 954, 958 (1939)).

■ In cases involving real property, Kentucky courts have recognized that a constructive trust may arise when a grantor conveys property to a grantee with an agreement that the grantee will make a certain disposition of the property. *Farley v. Gibson,* 235 Ky. 164, 167–68, 30 S.W.2d 876, 878 (1930); *see also Kaplon,* 690 S.W.2d at 762, 764 (fact that two children had advanced $38,000 to their mother to purchase home "in return for a promise that the children would share a joint beneficial interest in the house" justified imposition of constructive trust against stepfather following mother's death). The evidence of such an agreement, however, must be "clear, unequivocal, and convincing." *Johnson v. Wikstrom,* 242 Ky. 636, 638, 47 S.W.2d 61, 62 (1932).

■ Thus, William brings this claim alleging a constructive trust for those portions of his grandparents' estate which Eleanor inherited from Fred, but which she failed to bequeath to him, allegedly in breach of promises which were made to him over a number of years. In doing so, he cites Fred's alleged destruction of Mae's will, as well as Osa's and Eleanor's alleged acquiescence in the act. William also relies upon the following alleged assurances that he would receive that portion of Eleanor's estate which originated from the estate of his grandmother, Mae Terrill:

- In 1966, Eleanor told William, "What comes from the Centers will go back to the Centers. What comes from the Terrills will go back to the Terrills."
- Osa told him after the death of Mae that he would eventually get "his share and more."
- After Fred's funeral Eleanor told a group of three people, including William, that when she died she would leave the Terrill farm to William, a Powell County farm to her family, and divide the rest among three people including William.
- In 2003 Eleanor's sister told William, "Things which come from your grandmother should go to your family. We don't want your things. It would not be right if you did not get them."

In reviewing this record, our view is that the circuit court did not err by summarily finding that the presented facts do not justify the imposition of a constructive trust. William makes no allegation that Fred agreed to convey anything to him. Instead, the allegation is that Osa said to keep quiet and William would get his share and more. Further, William makes no allegation that Fred made any promise to either Mae or her sister, Mary Cable, that all property which they left to him would ultimately be bequeathed to William. Even assuming, without deciding, that Fred destroyed Mae's will when William was some 34 years old, William had a legal remedy which he chose not to pursue based on his father's statements, not those of his uncle. In fact, except for the conversations which occurred in 2000 and in 2003, all of the events of which William complains are nearly 30 years past, and all of the principals involved and the likely witnesses are dead.

Next, for the purposes of this appeal only, we will accept as true William's allegation that Eleanor promised to convey to him all assets she had received which originated with the Terrill and Cable families.

Even so, Kentucky courts long ago recognized that a mere promise to devise or bequeath property, without consideration, may be revoked and the testator may refuse to follow through on the promise. *Price's Adm'x v. Price's Adm'x*, 111 Ky. 771, 779, 64 S.W. 746, 748 (1901). As William admits that the promises were without consideration, stating in his brief that he "relied on the gratuitous promises and actions of Eleanor," [2] his argument must fail.

 William nevertheless adamantly maintains that property which originates in one family should remain in that family, and that he is doing nothing more than trying to enforce family loyalty. While we appreciate the sentiment of his argument, the longstanding rule in Kentucky is that a testator, of sound mind and under no undue influence, is generally free [3] to leave his or her property to such persons or institutions, in such shares and on such conditions, as he or she deems prudent. *Kiefer's Ex'r v. Deibel*, 292 Ky. 318, 323, 166 S.W.2d 430, 433 (1942); *Cecil's Ex'rs v. Anhier*, 176 Ky. 198, 223, 195 S.W. 837, 846 (1917); *Hildreth v. Hildreth*, 153 Ky. 597, 603, 156 S.W. 144, 146–47 (1913); *Childers' Ex'x v. Cartwright*, 136 Ky. 498, 506, 124 S.W. 802, 804 (1910); *Broaddus' Devisees v. Broaddus Heirs*, 73 Ky. (10 Bush) 299, 305–06 (1874). And, a court or jury may not remake a will for the testator that "accords with [its] ideas of justice and propriety." *Childers' Ex'x*, 136 Ky. at 506, 124 S.W. at 804. If the Terrills had desired that William, as their only grandson, should receive the benefits of their bounty following the deaths of their sons and their spouses, any moderately skilled estate planning attorney could have helped them accomplish that result.

The judgment of the Wolfe Circuit Court is affirmed.

ALL CONCUR.

---

2. The common meaning of "gratuitous" is "done or performed without obligation to do so; given without consideration." Bryan A. Gardner, *A Dictionary of Modern Legal Usage*, p. 391 (2d ed.1995).

3. The primary exception to this general rule is, of course, that a surviving spouse may elect against the will under KRS 392.080.