## Becker, et al. v. Neurath, et al.

(Decided September 24, 1912.)

### Appeal from Jefferson Circuit Court (Chancery, First Division).

1. Trusts—Parol Constructive Trust.—Where a husband was induced to convey property to his wife, by her promise that at her death she would give it to his children, a parol constructive trust will be created that equity will enforce as between the children and the person to whom the property descended upon the death of the wife, there being no creditors or purchasers involved.
2. Trusts—Evidence to Support Parol Constructive Trust.—It is not necessary to the establishment of a parol constructive trust that there should be evidence to show that the grantor was induced to make the conveyance by the actual fraud of the grantee. Where the grantor is induced to make the conveyance by the promise of the grantee that she will hold it for the use of the trust agreed upon, fraud sufficient to justify the enforcement of the trust will be implied from the failure of the grantee to carry out the contract under which the property was received.

J. W. S. CLEMENTS for appellants.

McDERMOTT & RAY, BYRNE & READ for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

About 1897, William Becker, a widower and the father of five children, married Anna Buzek. At the time of the marriage she did not own any property, but he owned property worth $12,000.00 or $15,000.00. In 1900, he made a will, in which he gave to his wife a house and lot in the city of Louisville, worth about $1,000, and all of his household effects, which came into her possession after his death. The balance of his es-

tate he devised to his five children, share and share alike. In August, 1905, he deeded to his wife for the nominal consideration of one dollar a house and lot in the city of Louisville, worth about $2,500, and in November, 1906, died. In 1910, his widow died, and thereafter this suit was brought by the children of the first marriage to recover possession of the property deeded to his wife in 1905. His widow died childless and intestate, and the house and lot in controversy descended under the law of descent and distribution to her sister, the appellee in this appeal.

The recovery of this property is sought upon two grounds: First, that William Becker at the time he made the deed was mentally incapable of understanding the nature and effect of the transaction and was unduly influenced by his wife to execute the instrument; second, that his wife obtained the conveyance under a parol promise made by her to her husband at the time or before the conveyance was made that if he would convey the property to her she would use and occupy it during her life and at her death give it to his children.

After the case had been prepared for trial, it was submitted for judgment, and the chancellor dismissed the petition of the children, who have prosecuted this appeal.

Concerning the issue of mental incapacity and undue influence, little need be said, as the evidence is not sufficient to justify us in disturbing the judgment of the chancellor, who declined to set aside the deed upon either of the grounds mentioned.

But, passing this, it is earnestly contended by counsel for appellant, that there is sufficient evidence to show that Becker was induced to convey the property to his wife by her promise to restore it to his children at her death, and, that this promise upon her part created a trust that a court of equity should enforce. One witness testifies that before the deed in question was made she heard a conversation between Mr. and Mrs. Becker, during which Mrs. Becker said "she wanted Mr. Becker to deed her some property; so that in case he should die before her, she would have a home and could live on the income; and, if he would do that, if he died first, she would give the property back to the boys at her death; she asked me if I thought it was right; I

said I thought it would be all right; then Mr. Becker said, if she would do so, that under the circumstances he would make the deed." This witness, as well as others, further testified that Mrs. Becker frequently and at different times after the death of her husband, said that she had promised to give the property to the "boys," and that she intended to do it, and the fact that Mrs. Becker made the promise related as well as the statements attributed to her, are strongly supported by the circumstances and stand without contradiction.

Assuming that Becker was induced to convey this property to his wife by her promise to give it to his children at her death, the legal question presented by the record is: Did this parol promise upon her part create a trust that can be enforced by his children against the person who, as heir at law of Mrs. Becker, received the property under the statute of descent and distribution, there being no creditors or other persons involved in the controversy except the children on the one side and the person to whom this property descended upon the other?

It is the contention of counsel for appellee that a parol contract respecting land such as is made out by the evidence in this case will not be enforced in this State, and in support of this proposition, we are referred to several cases, the more important ones of which we will notice.

In the case of Sherley v. Sherley, 97 Ky., 512, the heirs of Louis Sherley sought to recover the real property in controversy upon the ground that Louis Sherley and his father, Z. M. Sherley, entered into a parol agreement, by which Z. M. Sherley undertook to, and did buy, with his own means, the property for Louis Sherley under an arrangement or agreement between them by which Z. M. Sherley was to take and hold the title for Louis Sherley and for his children until the death of Z. M. Sherley, at which time it was to go to the children. But the court, after reviewing the authorities, held that no enforcible trust was established and that the heirs of Louis Sherley could not obtain the relief sought.

In Commonwealth v. C. & O. Ry. Co., 14 Ky. L. R., 681, the court in a similar case, said:

"A verbal agreement by the holder of the legal title that another shall be interested in the title or to buy

the land from a stranger for the benefit of another, without that other paying the consideration, comes directly within the statute and creates no enforcible trust.''

In Warmold v. Heinze, 90 S. W., 1064, it appears from the opinion that Lena Heinze and Lizzie Heinze, sisters, purchased a tract of land, which was conveyed to them jointly. Lena married Warmold, and died leaving one child, who, after the death of her mother, brought suit against Lizzie Heinze for a sale of the property. Lizzie Heinze resisted the sale upon the ground that it was agreed between her sister and herself before the land was conveyed that they would purchase it for a home to be occupied by their mother during the remainder of her life. and that it was purchased pursuant to that agreement, and their mother put in possession; and that their purchase of the land under the agreement constituted a trust of which their mother was the beneficiary and could not be disturbed in her possession. It appears that no evidence was taken to establish such an agreement, but the court after observing that its validity could not have been established by parol evidence, said:

''The alleged agreement between appellees and the mother of the infant appellant, whereby the land in controversy was to be purchased by them as a home for their mother, though praise-worthy, was purely voluntary, without consideration, and not being in writing, clearly within the statute of frauds.''

In Usher v. Flood, 83 Ky., 552, the evidence established that Usher agreed with a young man named Flood, whom he had raised, that if he would marry and observe certain other agreements, he would convey to him a lot and build a house thereon as a home for him. That Usher did erect a house, and placed Flood in possession of it, where he remained until the death of Usher, several years thereafter, although Usher did not convey to him the property or enter into any writing concerning it. After Usher's death, Flood sought to recover the property, but the court, in an extended opinion, ruled that the parol contract under which Flood claimed the property, was within the statute of frauds and not enforcible.

In Wilson v. Mullins, 119 S. W., 1180, it was attempted to enforce an alleged parol agreement between

husband and wife by which they mutually agreed that any property thereafter acquired, the title to which should be taken to the wife, or conveyed by the husband to her, should upon the death of either revert to and belong to the survivor. In declining, on behalf of the husband after the death of the wife, to enforce this contract against the heirs of the wife, the court, although recognizing that a valid parol constructive trust might be enforced, said:

"In the case under consideration, no witness testified that he was present and heard the alleged agreement made. * * * When we analyze their statements, and consider all their testimony, it is manifest that the whole effect thereof is that Mrs. Mullins wanted appellee to have her property at the time of her death, and was willing to execute a deed or will, if necessary, to effectuate her purpose. A formal agreement is not shown; nor is there any definite evidence showing when the agreement, if any, was made. Nor is it satisfactorily shown that the investments were made by appellee, and the property deeded to his wife upon the faith of such alleged agreement. * * * It is manifest that the witnesses thought of the agreement as such only when their attention to it was suggested by the leading questions of counsel. When stripped of the answers suggested by such questions, their testimony was only to the effect that appellee and his wife understood that the property of the one dying was to go to the one surviving."

In Speers v. Sewell, 4 Bush, 239, Rucker v. Abell, 8 B. M., 566, and many other cases, we have held that a parol agreement by the title owner of land to convey or devise it to another person was not enforcible, but this line of cases is plainly distinguishable from the one under consideration. Here the land was conveyed to the wife without valuable consideration under an agreement upon her part that she would hold it during her life, and at her death return it to the children of the grantor. The parol agreement in the case at bar was not made by the owner of the title, as in the cases referred to, but by the party to whom the owner of the title conveyed the property; and the text-books and cases, with practical uniformity, hold that an agreement such as was made between Mrs. Becker and her husband creates an enforcible constructive trust. In

Pomeroy's Equity Jurisprudence, vol. 3, sec. 1053, the principle is thus announced:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments or through undue influence, duress, taking advantage of one's weakness or necessity, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer or in the hands of any subsequent holder until a purchaser of it in good faith and without notice, acquires a higher right and takes the property relieved from the trust."

And this text is fully supported by Caldwell v. Caldwell, 7 Bush, 515; Brooks v. Brooks, 104 S. W., 392; Gilpatrick v. Glidden, 81 Me., 137, 10 Am. St. Rep., 245; Ahrens v. John, 169 N. Y., 555; Rollins v. Mitchell, 52 Minne., 41, 38 Am. St. Rep., 519; Moore v. Crawford, 130 U. S., 122, 32 L. Ed., 878; Curdy v. Berton, 79 Cal., 420; 5 L. R. A., n. s., 189; O'Hara v. Dudley, 95 N. Y., 403, 47 Am. Rep., 53; Trustees of Amherst College v. Ritch, 37 L. R. A., 305; 151 N. Y., 282; Crossman v. Keister, 223 Ill., 229, 8 L. R. A., n. s., 698; Larman v. Knight, 140 Ill., 232, 33 Am. St. Rep., 229.

But notwithstanding this well established doctrine, it is insisted that the evidence in this case is not sufficient to support the principle contended for by appellant. Upon this point the argument is made that before equity will lend its aid to enforce a parol constructive trust, it must be shown by satisfactory evidence that the grantor was induced to make the conveyance with the parol trust attached by the actual fraud of the grantee. Or, to put it in another way, that it must be shown by convincing evidence that the grantee by false representations or other fraudulent means, obtained the title without intending to carry into effect the express wish of the grantor in making the conveyance. That there are a few decisions supporting this contention may be admitted, but the tendency of the modern cases

and the great weight of authority is to enforce a trust of this character when it is shown that it would be unconscientious to permit the grantee to hold the estate in violation of the promise, although there may be no evidence of actual fraud on the part of the grantee in obtaining the conveyance. It is true that the doctrine of constructive trusts rests upon the ground that the grantor has been induced to part with his title by the fraud of the grantee, but it does not follow from this that it is necessary to show by fact or circumstance actual, intentional fraud practiced at the time by the grantee. When the grantee by act or word has induced the grantor to make the conveyance under an agreement or promise that certain parol conditions attached to it will be complied with, the law will imply a fraud from the failure of the grantee to perform the annexed conditions. If A. tells B. that he will take the title to property and hold it for the use and benefit of some other person, and by reason of this promise, B. is induced to and does convey the title, A. will be deemed to have practiced a fraud upon B. if he fails to observe the promise under which he obtained the conveyance. It is the end that the law looks at, and not the means by which this end is accomplished. If a grantee is enabled to obtain the title to property by an express promise to hold it for the use of another, and he fails to observe the promise, he is in fact and truth as much guilty of fraud as if by deceit, persuasion, cunning, or other evidence of actual fraud, he had obtained that which otherwise would not have come to him. No matter whether the grantee secured the property by what may be termed legal or constructive fraud, or by actual fraud, if he fails to make that disposition of the property that the grantor intended he should make and that he agreed to make, the person who, except for the promise, would have been the beneficiary of the estate, had been defrauded of that which was justly due him. To say that a grantee who by misrepresentations, deceit, or undue influence, obtains the title to property under a promise that he will hold it for certain uses, will be compelled by equity to perform the trust, but that the grantee who merely promises the grantor that he will hold the title for certain purposes, and upon this promise the grantor is induced to convey it, will not be required to perform the trust, would be to make a distinc-

tion without a difference and one that would often result in gross injustice. In O'Hara v. Dudley, supra, the court upon this point, said:

"Where in such case the legatee, even by silent acquiescence, encourages the testatrix to make a bequest to him, to be by him applied for the benefit of others, it has all the force and effect of an express promise. If he does not mean to act in accord with the declared expectation which underlies and induces the devise, he is bound to say so, for his silent acquiescence is otherwise a fraud."

In Gilpatrick v. Glidden, supra, the court said:

"We do not mean, however, that it is essential to the upholding of such a trust that a devisee should have been an active agent in procuring the devise to be made in his favor; for the great current of English authority during the last two centuries, as well as that of this country, holds that, if either before or after the making of the will, the testator makes known to the devisee his desire that the property shall be disposed of in a certain legal manner other than that mentioned in the will, and that he relies upon the devisee to carry it into effect; and the latter by any words or acts calculated to, and which he knows do in fact, cause the testator to believe that the devisee fully assents thereto, and in consequence thereof the devise is made, but after the decease of the testator the devisee refuses to perform his agreement, equity will decree a trust and convert the devisee into a trustee, whether, when he gave his assent, he intended a fraud or not, the final refusal having the effect of consummating the fraud." To the same effect is Curdy v. Berton, supra.

In Ransdell v. Moore, 153 Md., 393, the court said:

"An actual fraudulent intention on the part of the heir or devisee is not necessary to the creation of a trust of this nature."

We are of the opinion that the evidence in this case was sufficient to establish a parol constructive trust that equity will enforce. Becker, by his will made five years before the deed in question was made, had clearly indicated what disposition he wanted to make of his property, and what part he desired his wife and his children to have, and, except for the deed, it would have passed to them under the will in the manner therein directed. Between the time of his last marriage and

the date of the deed, the estate of Becker had depreciated greatly in value, so much so indeed that after setting apart to his widow the property given to her by the will and the property conveyed to her by the deed, the children only received a few hundred dollars each. It is fair to assume from all the facts and circumstances that Becker desired to make suitable and reasonable provision for his wife during her life and that he intended at her death that the property deeded to her should go to his children. That Mrs. Becker fully understood that it was the intention of her husband that the house and lot deeded to her should go to his children at her death, and that she desired to carry out this intention is made perfectly clear by her repeated declarations that at her death his children would get it. It also seems probable that, being an illiterate woman and ignorant of the law, she believed that when she died, it would go to the children, as both she and her husband intended it should, and, for this reason, did not during her life attempt to carry out her purpose by either deed or will.

In respect to the question of limitation raised by counsel for appellee, little need be said. The statute did not begin to run against the children of Becker until Mrs. Becker died. They had no cause of action until her death, as under the trust the property was to remain in her possession as long as she lived. The children of Becker are entitled to the property and the rents realized therefrom by appellees since the death of Mrs. Becker.

Wherefore the judgment is reversed with directions to proceed in conformity with this opinion.