## Shortridge v. Shortridge, et al.

(Decided March 13, 1925.)

### Appeal from Pike Circuit Court.

1. Trusts—Where Confidential Relation Exists, Not Essential to Constructive Trust by Parol that Conveyance Obtained by Actual Fraud of Grantee.—Where confidential relationship exists between parties, it is not essential to creation of constructive trust by parol that conveyance must have been obtained by actual fraud of grantee.

2. Trusts—Wife's Acceptance of Deed to Her by Husband Held Contemporaneous with Agreement to Recovery, thus Raising Parol Constructive Trust, Precluding her Heirs from Denying Title in Husband.—Where husband immediately after being sentenced to penitentiary conveyed his property to wife without her knowledge, and deed was delivered to wife, and latter shortly thereafter visited husband, who informed her that if he returned she was to reconvey to him, to which she agreed, held that wife's acceptance of deed and her promise to reconvey were contemporaneous, she thereby holding legal title under parol constructive trust, and where she not only never claimed title to land, but later attempted to reconvey to husband by a void deed, her heirs could not thereafter deny title in husband.

F. W. STOWERS for appellant.

STRATTON & STEPHENSON for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing upon the original appeal and affirming upon the cross-appeal.

In May, 1904, the appellant was convicted of manslaughter and his punishment fixed at confinement in the penitentiary for eight years. Just before he was taken from the jail at Pikeville to the penitentiary at Frankfort, he conveyed his farm of 500 acres or more to his wife, without valuable consideration or her knowledge, had the deed recorded, and directed the clerk to deliver same to her, which he did the next day. Appellant did not see her before his departure from Pikeville, or until shortly after his arrival at the penitentiary, when she visited him there. He then explained to her that his purpose in deeding the land to her was to enable her the better to manage it and provide for herself and their family during his absence, and so that, if he should not survive his confinement, she would own same, but that if

he did return she was to reconvey same to him, and to this she agreed. He was pardoned in about two years, returned home, and thereafter managed and claimed the farm as his own, with her knowledge and consent.

In May, 1916, she became ill, and desiring to carry out her agreement to reconvey the land to him, sought advice as to how it could be done, and was advised by a lawyer that she could not convey same directly to her husband but would have to do so through some third party. It was thereupon agreed between her, her husband, and their son, C. L. Shortridge, that she would convey the land to the latter, and that he in turn would convey same to his father. Complying with this agreement, she executed a deed to the son, C. L., and he conveyed same to his father. These deeds were recorded, and not long thereafter she died. Appellant remained in possession of the land, claiming same as his own, and in March, 1920, with the knowledge of his children, sold the merchantable timber thereon to Whitt and Slone, who branded the trees and paid him 25 per cent of the purchase price.

Shortly thereafter, two of appellant's sons, C. L. and Crockett Shortridge, served notice on Whitt and Slone not to remove any of the timber or make further payments therefor to their father, that the deed from their mother to C. L. referred to above was void because their father had not joined therein, and that the land and timber thereon belonged to them as heirs of their mother. Appellant then instituted this action against his six children and their spouses to regain legal title to the land, upon the ground that although the deed by which his wife attempted to reconvey the land to him in accordance with their agreement so to do was void because of his failure to join therein, he was at all times the equitable owner thereof, and that she simply held legal title thereto upon a trust, which she always had recognized and had attempted to perform, and that, claiming under her, all his children should be required to abide thereby and reconvey the land to him, as one daughter, Gene Kosee, had done.

The chancellor adjudged him the owner of an undivided one-sixth interest in the land under the deed from Mrs. Kosee, but dismissed his action against his other children and adjudged them the owners of the remaining five-sixths interests in the land, subject to his life interest. From that judgment he has appealed, and the children, other than Mrs. Kosee, have cross-appealed

from so much thereof as gave him curtesy rather than dower in the five-sixths interests adjudged to them.

The several other questions argued in briefs need not be discussed or even stated, since we are convinced that under the above facts, clearly established by the proof, appellant was at all times the equitable owner of the land, and his wife simply held the legal title thereto under a parol constructive trust which she at her death could not have denied or avoided, and which therefore her children, claiming the land as her heirs, can neither deny nor avoid.

That such would have been the case if her agreement to reconvey had been made before or at the time her husband conveyed the land to her, even if no confidential relationship had existed between the parties, is clearly established under the decisions of this and other courts. Becker v. Neurath, 149 Ky. 421, 149 S. W. 857; Erdman v. Kennedy, 159 Ky. 509, 167 S. W. 685; Chapman's Admrx. v. Chapman, 152 Ky. 344, 153 S. W. 434; Skinner v. Rasche, 165 Ky. 108, 176 S. W. 942; Rudd v. Gates, 191 Ky. 456, 230 S. W. 906, 26 R. C. L. 1238, 39 Cyc. 172.

These cases are also conclusive that it is not essential to the creation of a constructive trust by parol, at least where the relationship between the parties is one of confidence and trust, that the conveyance must have been obtained by the actual fraud of the grantee, although there are some early cases to that effect.

The modern doctrine in such cases, and the one supported by the great weight of authority, is, as stated in Becker v. Neurath, and approved in Chapman's Admr. v. Chapman, *supra*:

> "to enforce a trust of this character when it is shown that it would be unconscientious to permit the grantee to hold the estate in violation of the promise, although there may be no evidence of actual fraud on the part of the grantee in obtaining the conveyance."

But in those and many like cases we have examined, the promise relied upon was made prior to, or contemporaneous with the execution of the conveyance, and we shall therefore admit, for the purposes of this case, that a constructive trust will not arise upon a promise made by the grantee after absolute title has vested, as undoubtedly is the rule where no confidential relationship exists, although we are inclined to the view that in

all cases where such relationship does exist, and the conveyance was induced solely thereby, the decision must turn upon all the circumstances rather than simply upon when the promise was made, since otherwise an arbitrary limitation would be placed upon the power of courts of equity to do equity in a sphere where their jurisdiction rests solely upon such power being plenary.

The question then for decision is, when, under the facts as recited above, did title vest in Mrs. Shortridge?

The husband had the right, of course, to give his land to his wife absolutely and without restrictions or conditions attached thereto, had he desired so to do, but even such a gift as that could not be consummated without acceptance upon her part. Although the deed on its face imports such a gift, it is clear from the evidence it was never so intended by the grantor, and it is, we think, equally clear from the evidence that it was not so regarded or accepted by the grantee. This depends of course upon whether her aceptance occurred when the clerk delivered the deed to her, or when she, for the first time thereafter, discussed the matter with her husband and agreed to the terms and conditions upon which he had executed it.

That it must be held to have occurred at the latter date is, we think, clear, since, if it was accepted by the grantee when the deed was delivered to her by the clerk, the minds of the parties never met, but if the acceptance occurred when, for the first time, the parties had an opportunity to agree about the matter, the promise of the grantee to reconvey was a part of the transaction from the very instant there was any mutuality therein.

We are therefore of the opinion that Mrs. Shortridge's acceptance of the deed and her promise to reconvey were contemporaneous, and sufficient to raise a constructive trust, even if there had been no confidential relationship existing between the parties.

This being true, it necessarily follows that her children, as her heirs, cannot claim for the deed to her an effect which she not only never claimed for it, but consistently denied, and in good faith attempted, before her death, to repudiate in such manner as to preclude the possibility of their ever making such a claim.

We, therefore, conclude that the chancellor erred in refusing to restore to the appellant title to the land, and that he did not err in refusing to adjudge him dower therein.

Wherefore, the judgment is reversed upon the direct appeal and affirmed upon the cross-appeal, and the cause is remanded with directions to enter a judgment in conformity herewith.