## Hull et al. v. Simon.

May 16, 1939.

· HORACE W. ROOT, LOUIS REUSCHER and VINCENT REUSCHER for appellants.

DANIEL W. DAVIES for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Ella Simon died intestate in September, 1934, without issue and leaving surviving, as her heirs at law (her mother having predeceased her), only her father, William Horn, and her husband, Charles Simon, who was thereupon appointed and qualified as administrator of her estate.

In October next following Ella Simon's death, her father, William Horn, died, leaving a last will, by which he devised his estate to his children.

This action was brought by the deceased Horn's children and his executor against the appellee, Charles Simon, individually and as the administrator of his deceased wife's estate, asking a settlement of it and that he be required to settle his account, as her administrator, with the master commissioner and directed to refund the amounts alleged wrongfully paid himself out of her estate.

Thereupon the defendant, Charles Simon, here the appellee, filed his answer as administrator, setting out his settlement of his account, as such, with the master commissioner, and further filed in his individual capacity answer and cross-petition, alleging in substance that his wife, Ella Simon, had died without leaving any estate and, further, that although, at the time of her demise, she had on deposit in certain building and loan associations something over $12,000, which was carried in her name, and some $1,500 in cash, which she had previously drawn from such accounts and hidden about their home,

the said funds, aggregating considerably over $13,000, did not belong to her but represented the accumulated earnings of the defendant, her husband, which he had regularly turned over to her as he received them, to be kept and conserved by her for him, with the understanding that same were to remain his, save in the one event of his predeceasing his wife, when these funds were to become hers.

Issues being joined by appropriate pleadings, the case was referred to the master commissioner to hear proof upon the question as to whom these funds belonged at the time of Ella Simon's death; that is, whether they were beneficially owned by her and as such a part of her private estate, which the appellants sought to have apportioned and distributed among them, or whether they were received and held by the deceased in trust for her husband, the defendant.

The master commissioner, after hearing proof upon these matters pursuant to the order of reference, reported his finding and conclusion to be that the net estate of the deceased, Ella Simon, remaining after payment of its indebtedness, amounted to something over $12,000 and that the same was the deceased's private estate, which upon her death intestate descended in equal shares to Charles Simon, her husband, and William Horn, her father, who survived her and willed his interest in her estate to his children, the appellants.

The cause thereafter being submitted to the court for judgment upon the defendant's exceptions to the commissioner's report and the record, the learned chancellor sustained defendant's exceptions to the master commissioner's finding and adjudged that the plaintiffs had failed to show that any part of these building and loan deposits, carried in the name of Ella Simon at the time of her death, or of the cash found in her house after her death, was beneficially owned by her and, further, that there was no substantial evidence showing that she had possessed any private estate at the time of her marriage or had ever thereafter earned any income or wage, out of which she might have accumulated the amount in question or any part thereof. On the other hand, he adjudged that it was abundantly shown by the testimony of defendant's witnesses and also that of the appellants', as well as that of defendant given in his deposition, taken as if upon cross-examination by the plaintiffs, that this net estate in controversy represented

solely the accumulated earnings and wages of the defendant, Charles Simon, which he had received during the long period (some 25 years) of his childless married life with the deceased, Ella Simon, and all of which he had regularly turned over and entrusted, as they were paid him, to his wife, for her safe-keeping and handling for him, with the understanding and agreement at the time had between them, that they should be and remain his property and be repaid him, save and except in the one instance of his predeceasing her, in which event they were to become hers.

In harmony with such finding, the chancellor concluded that equity required that the decedent, having received and accumulated the appellee's wages under such circumstances and with such understanding, should be held to have received and held them as a constructive trustee for defendant and that, such being the rightful relationship of the parties as to the fund in question, the same constituted no part of the separate estate of the wife, but was a trust fund held by her solely for the use and benefit of the defendant, and accordingly directed the master commissioner to pay over to the defendant such part of this fund in controversy as remained in his hands.

Plaintiffs, feeling aggrieved by this ruling of the chancellor, have appealed, asking its reversal principally upon two grounds: (1) That it was erroneous because rendered by the chancellor when under the influence of the testimony given by defendant (upon which they allege it was mainly based) as to his transactions and communications had with his deceased wife in regard to these funds, which testimony is expressly prohibited and made incompetent and inadmissible by the provisions of Section 606, subsection 2, Civil Code of Practice, viz.:

"No person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by * * * one who is * * * dead when the testimony is offered to be given * * * unless * * * a representative of, or some one interested in, his estate, shall have testified against such person, with reference thereto."

And (2) that the testimony is insufficient to establish a constructive trust in favor of appellee.

Turning our attention to the disposition of the first of these objections (that is, that the judgment should be reversed because the evidence upon which it was based was incompetent and improperly considered by the chancellor as tending to support his decision), it is to be noted that appellants, in support of this contention, cite and rely upon the case of Nolty's Administrator v. Fultz, 261 Ky. 516, 88 S. W. (2d) 35, 37, wherein it was held, in an administrator's suit to recover property allegedly belonging to intestate's estate, that interrogatories addressed to defendant, under Sections 140, 141 and 606, subsection 2 of the Civil Code of Practice, made defendant competent to testify as to any matter within the field opened by the interrogatories, but not as to matters in other fields. The language of the opinion, in so holding, is that:

"When plaintiff propounded the questions he did to Mrs. Fultz, he thereby waived her incompetency as a witness and made her competent to testify about any matters concerning which he had interrogated her, but no further."

In the instant case, plaintiffs, in taking their proof in support of their contention that the money and deposited funds held in the name of the decedent, Ella Simon, at the time of her death belonged to her private estate, rather than held by her under a constructive trust for the defendant, took (as authorized by the provisions of Subsection 8, Section 606, Civil Code of Practice) the deposition of the defendant, as if upon cross-examination, wherein they inquired of him what had been the amount of his earnings, for whom he had worked, the wages received by him from his several employers, how he had disposed of them and if, and in what way, he had turned them over to his deceased wife.

In response to this interrogation, he answered that he had steadily worked for numerous employers, named by him, during the period of his married life with deceased, from whom he had received the aggregate amount of something over $20,000, which amount was substantiated by verified statements taken from the available records of his employers, by them put in evidence. Further answers given set out that he had paid his wages as received, in a lump sum, over to his wife, with the understanding, which existed between them, that she was to safely keep and preserve them for him, except such part thereof as was required for their frugal

living expenses; and that she had accepted his wages, so entrusted to her, with the understanding (in which she acquiesced) that she was to keep them for him; that in such way she had accumulated a fund, saved out of his earnings, of over $13,000 and that she always recognized that she was holding the fund in question in the fiduciary relationship of his wife and as representing solely his earnings and as being his sole property.

We are of the opinion that the holding in the case of Nolty's Administrator, relied on by appellants, does not sustain their contention, but rather supports the defendant's claim. In a second appeal of the Nolty case, Nolty v. Fultz, 277 Ky. 49, 125 S. W. (2d) 749, we upheld the ruling, supra, laid down in the first appeal, and further held that the mere possession of property by a donee is not sufficient evidence of a gift, since such possession may be consistent with a mere custody or agency, as was by the chancellor found to exist in the instant case.

We are therefore led to conclude, under the authority of the cited case, that in view of the special circumstances under which defendant testified to his having turned over his wages to his wife, his testimony (which if given by him in chief would clearly have been incompetent under the provisions of Section 606, Civil Code of Practice) was competent or rather its incompetency was waived when he thus testified in response to interrogatories propounded him by appellants concerning such matters.

Therefore, it is our conclusion that the learned chancellor did not improperly consider appellee's testimony given under such circumstances and that appellants' contention in respect to same is without merit.

Appellants' next contention is that the testimony here heard and considered by the court was insufficient to support his conclusion reached, that a constructive trust here existed on the part of the wife, in favor of appellee, with respect to these funds turned over by him to her, as his wife and confidante, to keep for him.

We deem it unneedful to here enter upon an elaborate discussion of this question, in that a like question was before the court and considered and disposed of adversely to appellants' contention in Shortridge v. Shortridge, 207 Ky. 790, 270 S. W. 47 (cited and quoted by the chancellor in support of his conclusion here reached).

448

There the facts out of which this question arose are that Shortridge, immediately after being sentenced to the penitentiary, conveyed his property to his wife without her knowledge; that deed was delivered to the wife, who shortly thereafter visited her husband, when he informed her that if he returned, she was to reconvey him his property, to which she agreed. Upon these facts, it was held that the wife's acceptance of the deed and her promise to reconvey were contemporaneous, that she thereby held legal title under a parol constructive trust and that the heirs could not thereafter deny title in the husband.

This court, in so deciding, said:

"We are convinced that under the above facts, clearly established by the proof, appellant was at all times the equitable owner of the land, and his wife simply held the legal title thereto under a parol constructive trust which she at her death could not have denied or avoided, and which therefore her children, claiming the land as her heirs, can neither deny nor avoid.

"That such would have been the case if her agreement to reconvey had been made before or at the time her husband conveyed the land to her, even if no confidential relationship had existed between the parties, is clearly established under the decisions of this and other courts. Becker v. Neurath, 149 Ky. 421, 149 S. W. 857; Erdman v. Kenney, 159 Ky. 509, 167 S. W. 685; Chapman's Ex'r v. Chapman, 152 Ky. 344, 153 S. W. 434; Skinner v. Rasche, 165 Ky. 108, 176 S. W. 942; Rudd v. Gates, 191 Ky. 456, 230 S. W. 906; 26 R. C. L. 1238; 39 Cyc. 172.

"These cases are also conclusive that it is not essential to the creation of a constructive trust by parol, at least where the relationship between the parties is one of confidence and trust, that the conveyance must have been obtained by the actual fraud of the grantee, although there are some early cases to that effect.

"The modern doctrine in such cases, and the one supported by the great weight of authority, is, as stated in Becker v. Neurath, and approved in Chapman's Ex'r v. Chapman, supra:

"'To enforce a trust of this character when it

is shown that it would be unconscientious to permit the grantee to hold the estate in violation of the promise, although there may be no evidence of actual fraud on the part of the grantee in obtaining the conveyance.' "

Compare also the cases of Motley's Adm'rs v. Tabor, 208 Ky. 702, 271 S. W. 1064, and Huff v. Byers, 209 Ky. 375, 272 S. W. 897, wherein is declared and applied the same rule as announced in the Shortridge case, supra.

See too 26 R. C. L., Section 78, page 1232, dealing with the subject of constructive trusts, which are thus discussed:

"Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. They arise purely by construction of equity, independently of any actual or presumed intention of the parties to create a trust, and are generally thrust on the trustee for the purpose of working out the remedy."

See also Pomeroy's Equity Jurisprudence, 4th edition, volume 3, section 1044, page 2370 discussing the subject of constructive trusts.

Independently of appellee's testimony in regard to the sources of the property held by his wife at the time of her death, and tending to show that it was held by her under a constructive trust for the benefit of her husband, numerous other witnesses testified that the deceased, Ella Simon, had no estate or income at the time of her marriage to appellee nor thereafter took employment or received any income from which she could have accumulated any part of the funds here in controversy. They also testified that the deceased had frequently mentioned and declared that she had no private estate and that her husband habitually turned over to her his earnings and entrusted them to her, to be deposited and carried in her name for him; and that she, whenever discussing her holding these funds in her name, stated that they belonged solely to her husband and that she was only keeping same for him and always recognized and admitted that she held this fund according to the understanding and agreement had with her husband at the various times when he turned over his wages to her.

In view of such being the evidence, as well as the rule of equity imposing a trust upon the holder of funds received and held under such circumstances, we have no hesitancy in affirming the holding of the chancellor, as being here in harmony with our views and altogether proper.

Judgment affirmed.