RENDERED: DECEMBER 5, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0560-MR

DAVID DOUGLAS PETERSON AND
KRISTIAN R. PETERSON                                        APPELLANTS

APPEAL FROM MARION CIRCUIT COURT
v.      HONORABLE KAELIN G. REED, JUDGE
ACTION NO. 22-CI-00141

JOSEPH ROBERT PETERSON AND
MARY DANA PETERSON                                          APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND MᶜNEILL, JUDGES.

ECKERLE, JUDGE: This appeal calls for review of the Trial Court's decision to order the sale of the half-century-old family farm because one of the five children, who holds a nominal, undivided interest, wishes to disregard the express, written intentions of both of his parents; his own promises and understanding; the history

of the workings of the property; and the agreements, desires, and actions of all four of his siblings.  Kentucky law provides for a constructive trust under these circumstances to effectuate the will of the grantor and all of the other family members that the property shall not be sold or divided.  Therefore, after careful analysis, we reverse and remand this matter back to the Trial Court for the imposition of said trust.

## I.     Factual and Procedural History

In 1968, Eugene Peterson ("Eugene")[1] and Barbara Peterson ("Barbara") (collectively, "the Parents") purchased a 135.458-acre property located on Miller Pike in Marion County, Kentucky ("the Farm") jointly, with the remainder interest passing to the survivor.  The Farm includes a residence and a farming operation.  Eugene and Barbara had five children in the following, chronological order:  Gene Mark Peterson, Jr. ("Gene Mark"); Appellee,[2] Joseph Robert Peterson ("Joey"); Debbie Peterson ("Debbie"); Tim Peterson ("Tim"); and Appellant, David Douglas Peterson[3] ("Doug"), (collectively "the Children" or "the Siblings").

---

[1]  We use the first names of the parties in this case because all of the parties have the last name of "Peterson."

[2]  Joey's wife, Mary Dana Peterson, is also an Appellee.

[3]  Doug's wife, Kristian R. Peterson, is also an Appellant.

All of the Children were raised on the Farm before four of them left to pursue their education, careers, and personal lives. Only Doug stayed at the Farm after high school, partnering with his father until Eugene retired in 2005, when Doug then took over all farming operations and paid all expenses on the Farm, including taxes and insurance. None of the other Children contributed to the Farm either financially or via in-kind labor after they left the Farm, although Joey contends that he performed paid work for Eugene on occasion between the mid-1970s and 1995.

Eugene and Barbara continued to reside at the Farm and retained joint ownership. Some years after his retirement, Eugene's health declined, and he and Barbara confronted medical debt and long-term care. In 2012, for the sole, over-arching, and expressed purpose to protect the family Farm from being sold, divided, or otherwise encumbered, Eugene and Barbara deeded the Farm to the five Children equally in one-fifth shares, retaining a life estate. Significantly, the Children paid no consideration for their interests. The undisputed reason for the transfer of bare legal title was to avoid losing the Farm. All of the Children, including Joey, admit that, although not stated in the deed, Eugene and Barbara remained the equitable owners of the Farm and that, upon request, the Children were obligated to return full ownership to the Parents at any time.

Three years after the deed's execution, Eugene died, in July of 2015. Prior to his death and immediately thereafter, Barbara expressed her desire for Doug to have the Farm. Since Doug had always lived there, was running the farming operation on his own, and took care of the residence and property, Barbara, Doug, and three of the other siblings (Gene Mark, Debbie, and Tim) agreed that the Farm should pass to Doug. Joey did not.

However, Joey has admitted repeatedly that, as a condition of receiving nominal 1/5 title, he was required to return his interest upon Barbara's request:

> Q:  You understood at that time, did you not, that if your mom and dad changed their minds the next week and said, "We don't want to do this anymore," that it was still their farm?
>
> A:  Yea.
>
> Q:  You weren't going to deny them their wishes and their right to control that farm during their lifetime, were you?
>
> A:  No.

(Video Record on Appeal ("VR"), 11:23:22-11:24:03.) Nonetheless, he did not honor his prior promise – a duty he readily and openly acknowledged to the Trial Court:

> Court:   If she had asked you to sign the Deed back to her would you have signed it?

A: If she'd have asked me, yes.

(VR, 11:31:02-11:31:15.)

Everyone – including Joey – averred that the deed existed to ensure the Parents could keep the Farm whole; that the ownership actually remained with the Parents; and that either Parent could require a Sibling to transfer his nominal and not-paid-for interest upon direction:

> Q: I just want to understand, you indicated in response to the Court's question that, even after your father passed away, if your mother had come to you and said, "I want you'all [sic] to Deed all of this property back to me, as opposed to Doug, back to me," that you would have felt obligated to do that.
>
> A: Yea. I did what she wanted me to do.
>
> Q: So, regardless of what this 2012 Deed said, you would acknowledge that your mom and your dad and their wishes controlled.
>
> A: Absolutely.
>
> Q: And if they had said, "I want everybody to Deed their interest to Joey," then if that was their intent and wishes, then everybody would understand they needed to comply with what their wishes were, right?
>
> A: Yea. If that's what they said.
>
> Q: Okay. And this was even after your father's death when, as you said, if your mother had come to you and said "Deed it back to me," you, as well as your siblings would have felt obligated to do that for her.
>
> A: Yes.

. . . .

Q: And even after 2012, when this Deed was made, you
knew as well as your siblings that if your mom wanted
you to do something with that property, if she wanted you
to convey it back to her, you would have been there to do
it.

A: Yes.

(VR, 11:38:16-11:39:35, 11:44:07-11:44:26.)

By September of 2016, it had become apparent that Joey was recalcitrant. To motivate Joey further to transfer his undivided interest, which he had already agreed to do, Barbara executed a codicil to her will. This document directed that, after Barbara's death, each of the Children were to convey their one-fifth interest to Doug in exchange for $50,000. Nonetheless, Gene Mark, Debbie, and Tim stated that they knew that they would be required to transfer their interests to Doug without any compensation.

Barbara retained her equitable interest in the Farm until her death five years later in 2021. Pursuant to her directive upon her death, Doug paid three of his Siblings (Gene Mark, Debbie, and Tim) $50,000 each for their one-fifth interest in the Farm in return for their execution of deeds of transfer back to him. Doug attempted to pay Joey, but Joey refused to accept these long-established and agreed-upon terms that had existed for almost one decade, since the 2012 deed. He declined the payment and transfer of his 1/5 interest in disregard of his mother's

-6-

express requests and for which he had offered no consideration. Gene Mark testified that Joey claimed that the Siblings were "stupid" for allowing Doug to receive the Farm for payments far less than the property's worth. (VR, 10:30:42-10:31:56.)

Instead, Joey filed suit in Marion Circuit Court in 2022, seeking to force the sale of the family farm and receive one-fifth of the profit, which as he indicated, is likely worth considerably more than $50,000. In defense of his ownership, Doug filed a counterclaim seeking a constructive trust over Joey's undivided interest in the Farm in compliance with the intent behind the deed, as well as his Parents' directive.

The Trial Court conducted a bench trial and entered judgment in favor of Joey. The Trial Court rejected the imposition of a constructive trust, concluding that the relationship lacked the requisite "prior or contemporaneous agreement, promise, or acquiescence," which it reasoned did not occur in relation to "the 2012 property transfer from Barbara and Eugene Peterson to the five Peterson siblings." Record on Appeal ("ROA") at 101, Findings of Fact, Conclusions of Law, and Judgment dated May 3, 2024, at p. 6. The Trial Court stated that Barbara's oral directions and written codicil in 2016 instructing the Siblings to sell their respective one-fifth interests in the Farm to Doug for $50,000 each was not contemporaneous to the 2012 transfer of the deed. ROA at 101, p. 6. The Trial

Court made the specific finding of fact that "Joey never agreed, promised, or acquiesced to transfer his interest in the [Farm] to Doug prior to or contemporaneous with the 2012 property transfer." *Id.* Upon judgment in favor of Joey, the Trial Court referred the matter to a Master Commissioner to sell the Farm and divide the proceeds.

## II. Standard of Review

The Trial Court conducted a bench trial, which provides a clearly erroneous standard for our review of its factual findings:

> In actions tried upon the facts without a jury we review the court's findings under the clearly erroneous standard set forth in Kentucky Rules of Civil Procedure (CR) 52.01. *Largent v. Largent*, 643 S.W.2d 261, 263 (Ky. 1982). This rule provides in pertinent part that findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Id.*

*Keeney v. Keeney*, 223 S.W.3d 843, 848-49 (Ky. App. 2007). This Court has held that "[a] factual finding is not clearly erroneous if it is supported by substantial evidence[,]" which is evidence that "when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Gosney v. Glenn*, 163 S.W.3d 894, 898-99 (Ky. App. 2005); *see also Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998); *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 117 (Ky. 1991).

"However, while deferential to the lower court's factual findings, appellate review of legal determinations and conclusions from a bench trial is *de novo*." *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016) (citing *Sawyers v. Better*, 384 S.W.3d 107, 110 (Ky. 2012)).

### III. Analysis

As Doug argues: (1) there was a contemporaneous agreement in 2012 to deed the Farm to the Siblings under bare legal title upon the express parol promise and condition that they return legal ownership to the Parents upon request; and (2) even if Barbara's 2016 direction in her codicil to sell all interests in the Farm to Doug was not made at the same time as the deed transfer, it was made prior to it. Pursuant to our standard of review, if the Trial Court's findings contradict the evidence that there in fact was an express "*prior or contemporaneous* agreement, promise, or acquiescence," then the lower Court's findings are clearly erroneous. ROA at 101, at p. 6 (emphasis added). We so find.

First, the 2012 deed is the recording of the express intention of both Parents that the Farm that they had owned for many decades would be devised to the Children as long as the conditions of the *contemporaneous* oral agreement were met. Those contemporaneous agreements were specifically that the Farm actually remained the property of the Parents; the Children were required to abide by the wishes as to the ultimate disposition of the Farm; and the Children were not to sell

or divide their interests as devisees. In addition to the written agreement, the evidence establishes that the Siblings, including Joey, specifically agreed to be bound by these terms at the time of the transfer. Joey's sworn testimony at trial, quoted above, demonstrates his acceptance of this deal. The Trial Court's finding that Joey did not agree to return his interest to his Parents upon request is controverted by Joey's own admissions in his sworn testimony. Indeed, all of the evidence showed that the Parents still owned the Farm, and the Children were merely holding nominal interests in a type of trust until their Parents directed a disposition.

The evidence presented to the Trial Court confirms that the Parents and Children entered into a contemporaneous agreement in 2012. The Trial Court found that bare legal title to the Farm was transferred to the Children with no consideration paid and with the undisputed purpose of keeping the Farm intact by shielding it from potential medical debt. ROA at 101, at p. 1. Moreover, *each and every one of the five* Children testified, in one way or another, that they were obligated to deed their respective interests back to their Parents upon request. ROA at 101, at p. 1-2. However, the Trial Court omitted from its written findings Joey's own acknowledgement of this binding commitment that he had made to his parents. Joey admitted that if Barbara had directed the Children to deed the property back to her or even to transfer all their interest to a Sibling, all of the

-10-

Children, including Joey, were obligated to do so. Appellant's Brief at p. 5-6 (quoting VR, 11:44:07-11:44:26). The Trial Court directly references the testimony of other witnesses as to this fact but ignores this testimony from Joey, finding that he did not agree. ROA at 101, at p. 6. This ruling is clear error.

As the finder of fact and the determiner of the credibility of the witnesses, the Trial Court has the discretion to weigh the evidence, but it is a fundamental tenet of appellate review that "[d]iscretion is not [a] whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139, 126 S. Ct. 704, 710, 163 L. Ed. 2d 547 (2005). The Trial Court's factual findings must be supported by substantial evidence that "has sufficient probative value to induce conviction in the mind of a reasonable person." *Gosney*, 163 S.W.3d at 898-99. The Trial Court cannot simply ignore evidence altogether, without explanation, specifically the testimony of the very person seeking redress, in this case, Joey. Therefore, the Trial Court's finding, that Joey did not make a contemporaneous agreement in 2012 to return title to his parents upon request, is clearly erroneous when taken in the context of all the evidence presented, particularly Joey's own admission against his interest.

Second, the 2016 codicil cements this *prior* agreement. The undisputed evidence showed that Barbara feared that Joey would back out of his

agreement and would not comply with her directions, even though he admitted that they were binding upon him. Her concern, which ultimately proved true, was the very reason behind the codicil. Because Joey implied during Barbara's life that he would disobey the intentions behind the deed, Barbara tried to ensure that her wishes would nonetheless be fulfilled upon her death. The codicil acts in conjunction with the prior agreement. Therefore, the Trial Court's findings that the agreement was not contemporaneous, and that it is not a prior agreement to the codicil, also lack factual foundation. There is no substantial evidence supporting the Trial Court's findings of fact to the contrary, and we are required to reverse them. We are not operating under an abuse of discretion standard here, but rather one of clear error. We would be remiss if we did not find that error here.

Also, the Trial Court is clearly erroneous in its ruling that to find a constructive trust, Barbara's directives to transfer the Farm to Doug in return for consideration in her written codicil in 2016 would have to be contemporaneous to the 2012 deed. Doug is one of the Children and parties to the 2012 agreement and has been the actual proprietor of the farming business since Eugene's retirement. And Joey was also a party agreeing that the Farm remained his Parents' property and was subject to their will. This is not a case where a person deeded property to a non-related third party with the understanding that the grantor would keep a life estate. Eugene and Barbara deeded the Farm to their Children to protect it from

having to be sold and to keep it intact as a family farm. The bare legal title was split among the Children under the parol promise that it would be returned to the Parents at their request, thus further establishing the confidential relationship that already existed due to their family bond. It is also significant that the Children paid no consideration for their interests in the property. Most importantly, Joey, himself, admits that he was obligated to comply with his Parents' directives as to the land. Failing to do so by his refusal to transfer his one-fifth interest to Doug, when his mother directed him to, is an implied fraud.

Likewise, the Trial Court's finding that a confidential relationship did not exist is clear error. The evidence before the Trial Court was uncontroverted that the parties were related by blood: they are all direct family members. The Parents' medical and financial exposure undisputedly risked losing the Farm. They executed the deed to the Children for the sole purpose of ensuring that the land would not be divided, indebted, or sold by them. There is no evidence that the Parents actually intended for each Sibling to receive a divided one-fifth share to be accomplished at a sale. Rather, all of the evidence shows that the Parents maintained that the Farm shall be conveyed back to them upon any ask at any time. While this intent was omitted from the deed intentionally, it was established through the evidence and by the confidential relationship of the parties: by blood relation, by circumstance, and by desire and intent. Quite confidentially, the

Parents were trying to shield the Farm from their debt by making this type of conveyance rather than keeping it in their name only. Had they not taken this action, they likely would have had to divide, sell, and/or encumber the Farm, which is the very result they were trying to avoid – and the result that Joey now seeks. Stated differently, both Eugene and Barbara quietly took the necessary steps to preserve the Farm, and every Parent and Sibling except Joey want to comply with the decade-old directive to protect it from subdivision and sale.

Because a confidential relationship existed between the parties, a constructive trust is the appropriate legal venue by which to accomplish the intentions of the grantors. And the Trial Court's legal conclusions to the contrary do not survive our review, which is conducted under the *de novo* standard, discussed above, and which gives no deference to the lower Court's legal analysis.

We find that Doug's reliance on *Becker v. Neurath*, 149 S.W. 857 (Ky. 1912),[4] is squarely on point. *Becker* is the seminal authority and provides controlling authority – as opposed to mere guidance – for the imposition of a constructive trust where, as here, a confidential relationship exists, and no consideration is involved in the conveyance of property:

---

[4] The dissent takes issue with the age of the cases cited herein and in the briefing. We too wish that there were more recent law on the topic, which is one of the reasons that we have submitted this Opinion for publication. Nonetheless, the many well-established cases on which we rely are all still controlling precedent that we must follow.

> When the grantee by act or word has induced the grantor to make the conveyance under an agreement or promise that certain parol conditions attached to it will be complied with, the law will imply a fraud from the failure of the grantee to perform the annexed conditions. . . . It is the end that the law looks at, and not the means by which this end is accomplished.

*Id.* at 860.

Joey, by word and action, induced Barbara and Eugene to deed the Farm to him and his Siblings. The admitted evidence shows that Joey has acknowledged clearly and repeatedly that he received a 1/5 undivided interest in the Farm – without paying for it – by virtue of his promise to comply with his Parents' directive to transfer it back to them or otherwise comply with their wishes whenever they asked. When the ask came, he refused it. The undisputed evidence demonstrates that the duty to comply with the Parents' command was an express condition of the transfer of any interest in the Farm. Accordingly, under *Becker*, Joey's promise was fraudulent, because he did not (intend to) comply with it.

Additionally, Kentucky's highest Court has confirmed that where such a "confidential relationship" exists and forms the inducement for the conveyance, the decision "must turn upon all of the circumstances rather than simply upon when the promise was made, since otherwise an arbitrary limitation would be placed upon the power of courts of equity to do equity in a sphere where their jurisdiction rests solely upon such power being plenary." *Shortridge v. Shortridge*,

270 S.W. 47, 48 (Ky. 1925); *see also Hull v. Simon*, 128 S.W.2d 954 (Ky. 1939). In other words, grantees in a confidential relationship who have paid no consideration must comply with the wishes of the grantors even for directives that come after the conveyance. *Becker*, 149 S.W. at 860. In *Shortridge*, a husband conveyed property to his wife before going to prison. She only learned of the transfer after it had occurred. When he was paroled and his wife died, her children tried to lay claim to it. The Appellate Court held that the husband owned the property in equity, and the wife held it in trust even if she did not know of the conveyance contemporaneously with her knowledge and promise to keep it for him. It found that the spouses were in a confidential relationship, and they had a meeting of the minds about the transfer after it was made. "We are therefore of the opinion that Mrs. Shortridge's acceptance of the deed and her promise to reconvey were contemporaneous, and sufficient to raise a constructive trust, even if there had been no confidential relationship existing between the parties." *Shortridge*, 270 S.W. at 48.

The Trial Court clearly erred by finding that the directive to convey the Farm to Doug would have had to be part of the 2012 deed. Even if we were not to find that the agreement was contemporaneous and the codicil confirmed the prior agreement – which we do not find – the timing of the promises, deed of transfer, and codicil are not controlling. Rather, of utmost importance here are

Joey's statements that he would give the Farm back when asked, made in order to receive property, and his actions in doing the exact opposite, made in order to keep part of the Farm and money for himself. This is exactly the type of perpetrated fraud envisioned by *Becker*; it is a similar situation to that of *Shortridge*; and it calls for the legal imposition of a constructive trust under these circumstances. Joey was required to convey the Farm in whatever manner his Parents ordered; he agreed to do so while they were alive; once they were dead, he refused to make the transfer; he thereby violated the confidence; he was in a confidential relationship with them and his Siblings; and the law does not permit him to profit from this malfeasance.

Even if we were to find no fraud here, fraud is not always required in order to impose a constructive trust. The Kentucky Supreme Court has indicated in an unpublished opinion that where clear and convincing evidence of a confidential relationship exists, a constructive trust may be imposed as a remedy without proof of an actual fraud. Illustratively, in *Hammond v. Hammond*, No. 2015-SC-000205-DG, 2016 WL 4487463, at *1 (Ky. Aug. 25, 2016) (unpublished), which we cite pursuant to Kentucky Rule of Appellate Procedure ("RAP") 41(A), our higher Court reviewed the Court of Appeals' imposition of a constructive trust in favor of a son who sought the return of property 30 years after he contributed a portion of the original purchase price. *Id.* The Kentucky Supreme Court recognized that a

"party asking the court to impose a constructive trust need not show actual fraud but can succeed if the court determines that 'it is against equity that [the property] should be retained by him who holds it.'" *Id.* at 5 (quoting *Hull*, 128 S.W.2d 954). However, the Kentucky Supreme Court reversed, finding that a constructive trust was not warranted because the Trial Court was faced with contradictory testimony and a lack of other evidence of constructive ownership. *Id.* at *6. Under those circumstances, the Court of Appeals was not entitled to re-weigh the evidence in favor of one party over the other. *Id.*

The circumstances of this case, however, warrant a constructive trust, and the testimony here is quite consistent. Joey has admitted that he did not actually own 1/5 of the Farm and was required to comply with his Parents' commands with regard to it; and there was a plethora of evidence that Doug constructively owned the Farm. Indeed, out of all of the Siblings sharing title to an undivided 1/5 of the whole, only Doug's relationship to the Property and ownership interest in the entire Farm is more than in name only. Doug has operated the Farm on his own for at least 20 years without any substantial assistance from any of his Siblings. His investment is both financial and based in sweat equity. All of the evidence, including Joey's testimony, showed that the Parents never wanted the Siblings to sell the Farm or divide it among themselves. Accordingly, it is against equity to hold that Joey may alone force the sale of the

-18-

Farm. As a Court of plenary power in equity, the Trial Court could, and should in this case, have directed the fair result. The Trial Court here clearly erred in its application of *Becker*, *Shortridge*, and *Hull* (not to mention the unpublished law)[5] to these facts.

The facts of this case are the exact circumstances under which this Court (and the Trial Court below) must exercise its equitable power to impose a constructive trust. The parties are in a confidential relationship, which is key here, and an actual fraud or other unconscionable action need not be shown. And yet, an implied fraud does exist under these facts because Joey said one thing and yet did another. Eugene and particularly Barbara, who were at all times the equitable owners of the Farm for most of the past 60 years, expressly indicated the desire that the Farm should remain intact and should pass to Doug, who should pay each of the other Children $50,000 for their undivided interests. The Trial Court acknowledged as much: "I am convinced that the plan was that Doug was going to be allowed to operate the farm and was going to be allowed to buy his siblings out, probably at a predetermined price." (VR, 11:49:32-11:50:49.) Joey's refusal as

---

[5] We are aware that there exists further support for the imposition of a constructive trust from our Court in *Sharp v. Sharp*, Nos. 2009-CA-001432-MR and 2009-CA-001583-MR, 2011 WL 4407457, at *3 (Ky. App. 2011) (unpublished), which is cited pursuant to RAP 41(A). Namely, "[w]hen legal title to property has been acquired or held under such circumstances that the holder of that legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id*.

minority owner does not give him the right to force the sale of this property for everyone, especially as Doug has always lived and worked there, and Joey has not.

Further, in its legal conclusions, the Trial Court erred by failing to distinguish properly the binding case law of *Becker* and *Shortridge*. Both of those cases support the finding of a constructive trust in cases where the parties have a confidential relationship, such as here, among family members to prevent the negative impact of the family Farm being sold, divided, or encumbered due to the Parents' medical decline, expense, and death. And while Barbara could certainly have asked for Joey to give the Farm back to her, the law does not require her to do so where the parties already had the agreement to that effect, the intent, the confidential relationship, and the transfer for lack of consideration. Rather, a constructive trust is the appropriate remedy.

The dissent does not use the same reasoning as the Trial Court, specifically contemporaneity. Rather, it relies upon this Court's opinion in *Bewley v. Heady*, 610 S.W.3d 352, 358 (Ky. App. 2020), for the proposition that a constructive trust requires a claim of "fraud, breach of confidence, breach of fiduciary duty, or unjust enrichment." *Id.* However, as already stated, proof of fraud is not necessary, even though there is evidence in this case to conclude that there was an implied fraud. Furthermore, there was no confidential relationship or contemporaneous agreement between any parties in *Bewley*. Additionally, the

-20-

parties who sought a constructive trust (children of ex-wife whose ex-husband murdered her then committed suicide) failed to show any claim of fraud or unjust enrichment against the opposing parties (children of ex-husband who inherited his non-probatable assets). *Bewley* recognized that: "When legal title to property has been acquired or held under such circumstances that the holder of that legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id.* at 357 (quoting *Middleton v. Beasley*, 216 S.W. 591, 592 (Ky. 1919) (citations omitted)).

Under the circumstances presented here, however, the confidential relationship existing between Eugene and Barbara and among their Children demands a constructive trust under these circumstances, and it was clear error for the Trial Court to conclude otherwise. This result does not constitute a re-weighing of the evidence because there is simply no denying the existence of a familial, confidential relationship. Further, the Trial Court omits Joey's own testimonial admissions in its findings. While it may judge the credibility of witnesses, it may not ignore entirely all proof contrary to its opinions without any explanation. Joey unquestionably assented to hold an undivided interest in the Farm solely to prevent depletion of that asset, and he admittedly agreed to give it back when asked. His refusal to keep his promise made as part of this confidential pact required the Trial Court to impose a constructive trust "to prevent an individual from retaining

-21-

property he or she acquired in an unconscientious manner, which really belongs to another[.]" *Id.* at 359 (quoting *Scott v. Scott*, 210 S.W. 175, 176 (Ky. 1919)) (citations and added emphasis in quote omitted). This confidential relationship – and lack of paid consideration – are key, essential elements of our holding. This case does not involve unrelated third parties operating across the table with equal bargaining power and exchanging money. The law does not permit Joey to keep possession only achieved as a result of a deception and an unkept obligation, and one made at the expense of the rest of his family, with whom he had a confidential relationship.

## IV. Conclusion

Therefore, we reverse the Findings of Fact, Conclusions of Law, and Judgment of the Marion Circuit Court dated May 3, 2024, in the above-styled action. It was clear error for the Trial Court to refer the Farm to the Master Commissioner for sale. We remand this matter back to the Circuit Court to impose a constructive trust in favor of full ownership of the as-described 135.458-acre property located on Miller Pike in Marion County, Kentucky, to Appellants, David Douglas Peterson and Kristian R. Peterson, who shall pay the sum of $50,000 to Appellees, Joseph Robert Peterson and Mary Dana Peterson.

CALDWELL, JUDGE, CONCURS.

McNEILL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

-22-

McNEILL, JUDGE, DISSENTING:  I respectfully dissent.  Like the Majority, I also have concerns about the result here.  However, this Court is neither the trier of fact, nor the most apt arbiter of the grantors' intent.  The remedy sought by Joey—judicial sale—is significant, but not extraordinary or without basis in law.  In contrast, the remedy sought by Doug—a constructive trust—is an extraordinary remedy in equity.  And while anyone familiar with either families or farms may empathize with the present issue, I cannot conclude that the trial court committed clear error, abuse of discretion, or any other omission or offense that would necessitate reversal in this instance.[6]

I take specific issue with the Majority's Opinion as follows:  1) I disagree that Joey's testimony indicates that he was obligated to transfer his title to his parents, siblings, or anyone else.  2) I believe that a Circuit Court of general jurisdiction holds equity as one of many arrows in its quiver.  And while the trial

---

[6]  I believe that the relevant standards of review are as follows:  "In actions tried upon the facts without a jury we review the court's findings under the clearly erroneous standard set forth in Kentucky Rules of Civil Procedure (CR) 52.01."  *Keeney v. Keeney*, 223 S.W.3d 843, 848 (Ky. App. 2007) (citing *Largent v. Largent*, 643 S.W.2d 261, 263 (Ky. 1982)).  "This rule provides in pertinent part that findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* With regard to the trial court's application of law to those facts, we engage in a *de novo*[.]"  *Id.* Further, we review the circuit court order of judicial sale for an abuse of discretion.  *Lerner v. Mortgage Electronic Registration Systems, Inc.*, 423 S.W.3d 772, 773 (Ky. App. 2014).  In order to establish a constructive trust arising from an oral agreement regarding land conveyed by a deed, evidence must be clear and convincing.  *Langford v. Sigmon*, 167 S.W.2d 820, 821 (Ky. 1943) (citaions omitted).

court here arguably may not have hit a bullseye, it was certainly on target *i.e.*, no clear error. 3) The published cases primarily relied upon by the Majority are dated, distinguishable, and not dispositive. *Becker v. Neurath*, 149 S.W. 857 (Ky. 1912), and *Shortridge v. Shortridge*, 270 S.W. 47 (Ky. 1925).[7]

More recent Kentucky authority clarifies that "constructive trusts may be imposed as a remedy associated with claims of fraud, breach of confidence, breach of fiduciary duty, or unjust enrichment." *Bewley v. Heady*, 610 S.W.3d 352, 358 (Ky. App. 2020). In the absence of clear evidence of such a basis for the imposition of a constructive trust, reversal is not required. To be clear, and contrary to the Majority's critique, I do not cite *Bewley* as *requiring* fraud. Rather, *Bewley*, *et al.*, represent a more comprehensive picture of what considerations are relevant when determining whether to impose a constructive trust. No one issue, contemporaneity, confidentiality—or otherwise—appears to be dispositive.

However, I agree with the Majority in finding *Hammond v. Hammond* to be persuasive. No. 2015-SC-000205-DG, 2016 WL 4487463, at *5 (Ky. Aug. 25, 2016) (unpublished case observing that fraud "*may occur in any form of unconscionable conduct*; taking advantage of one's weaknesses or necessities, or in

---

[7] Both cases significantly predate the 1976 Judicial Article, which fundamentally changed how our courts are structured in Kentucky. In that vein, the role of equity has evolved, and courts must now conform to modern procedural and structural dictates. Even the equitable authority of our Family Courts is not plenary.

any way violating equity in good conscience.") (citations omitted and emphasis added). To be clear, like *Bewley*, I recognize that *Hammond*'s broad language arguably *broadens* the bounds of equity trial courts *or* appellate courts—like the Court in the present case—may apply at their discretion. Yet, what is broad is not boundless. Thus, I am also instructed by *Hammond*'s conclusion:

> The trial court, faced with the preceding contradictory evidence, did what it was mandated to do, it weighed that evidence and made a finding in favor of one of the parties. The Court of Appeals, on the other hand, did what it was not entitled to do. It re-weighed the evidence and determined that the trial court found in favor of the "wrong" party. We empathize with Jack and, had we been in the trial court's position might have held differently. However, there was sufficient evidence of substance to support the trial court's judgment, and the Court of Appeals impermissibly substituted its findings for the trial court's. Therefore, we reverse the Court of Appeals and remand for reinstatement of the trial court's judgment.

*Id*. at *6. Although unpublished, the Supreme Court's admonition here is more than persuasive—at least, to me. In other words, reasonable minds may differ as to the breadth of equity and its application to the present case. I do not believe that equity commands reversal here. Therefore, I respectfully dissent.

BRIEFS FOR APPELLANT:

Joseph H. Mattingly, III
Lebanon, Kentucky

BRIEF FOR APPELLEE:

Dawn L. McCauley
Lebanon, Kentucky