## Langford et al. v. Sigmon.

Jan. 12, 1943.

Fritz Krueger for appellant.

E. R. Denney for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

This appeal is from a judgment cancelling a deed, absolute on its face, by which appellee conveyed to the appellant, Tessie Langford, a tract of land containing 15½ acres.

The appellants are the son-in-law and daughter of appellee, who, at the time in controversy, was past 75 years of age. Appellee had six other children. He had remarried a short while before the events giving rise to this controversy and relations were somewhat strained between him and all of his children except Mrs. Langford by reason of his remarriage. It seems that all the children except Mrs. Langford had homes of their own. In October, 1939, appellee, who owned a farm of 100 acres, conveyed to Mrs. Langford 21½ acres as a gift so that she might build a home thereon. This tract is not in controversy. It was the daughter's intention to mortgage the land to raise the necessary money to build a home but she was unable to do so on account of the limited acreage in the tract. The son-in-law, H. L. Langford, then approached appellee with the object of obtaining additional acreage. Appellee said he had no land to sell but after some talk back and forth he finally agreed to convey the 15½ acres in controversy, and the deed was executed in December, 1939. Langford had the tract surveyed and paid this expense as well as the expense of preparing and recording the deed. The land was taken in possession by appellants and some work was done thereon in the way of clearing and grubbing and a fence was also erected between the tract and the land retained by appellee.

It is appellee's claim that he conveyed the 15½ acres merely for the purpose of enabling his daughter to borrow sufficient money to build her home and that his son-

in-law, with whom the negotiations were held, agreed that the land would be reconveyed when the loan had been procured. He denied knowledge of any intention on his daughter's part to mortgage the land but it is apparent he knew of this intention since he admits having a conference with the loan agent through whom appellants had been attempting to effect a loan. Appellee did not testify as to any agreement of reconveyance on his daughter's part but his wife testified that the daughter was present when the deed was executed and was fully conversant with the purpose of the conveyance and made statements indicating her knowledge of the agreement of reconveyance made by the husband. In addition to the testimony of appellee and his wife, one witness testified that Langford told him that he was supposed to deed the land back when the loan was procured. Appellants had been unable to procure the mortgage loan at the time this action was filed.

Shortly after the deed was executed appellants moved to appellee's home and continued to reside with him. While residing there trouble occurred between Langford and appellee's wife which culminated in Langford procuring a warrant for her as a result of which she was fined $20. The fine was paid by appellee and it is clear from the evidence that he resented this very much.

Appellee and his wife claim that the trouble occurred when appellee requested a reconveyance of the 15½ acres. Appellants deny this and claim that the first knowledge they ever had of the claimed agreement to reconvey was after appellee became angered at having to pay the $20 fine for his wife. They say that appellee told them he was going to try to get the land back because they had caused him to have to pay the fine. In this they are supported by a number of witnesses who testified that appellee told them there would have been no trouble about the land if Langford had not taken out the warrant.

Appellants flatly deny that there was any agreement to reconvey and say that the conveyance of the 15½ acres was a straight-out gift just as was the conveyance of the first tract of 21½ acres. A daughter of appellee testified that she told her father to give Tessie (Mrs. Langford) any part of his estate that might be coming to her since all the others except Tessie had a home. She also testified that her father told her, after the execution

of the deed, that he gave the land to Tessie because he was expecting to be left there by himself some day and wanted Tessie to have a home there where she would take care of him. Other witnesses testified to similar statements made to them by appellee.

We think the foregoing statement is sufficient to show that the evidence was highly conflicting and contradictory. Many details and circumstances brought out in the evidence are omitted in the interest of brevity. Some of these details seem to indicate that the agreement of reconveyance was made while others indicate to the contrary. Of course, if the agreement was made as claimed by appellee such a reconveyance would have vested him only with legal title subject to the mortgage which it was understood between the parties appellants were to execute to secure money to build their home. This is a significant circumstance indicating that there was no agreement to reconvey.

From a careful consideration of all the evidence we are left with no feeling of conviction or certainty that the agreement to reconvey was made. We are left merely with a feeling of doubt on this issue and were this the usual and ordinary equity case in which a mere preponderance of the evidence is sufficient to justify relief we would feel compelled to affirm the finding of the chancellor under the well settled rule that where the mind of this court is left in doubt the chancellor's finding will be affirmed.

But it is a well settled rule in this jurisdiction, as well as in others, that in order to establish a constructive trust growing out of an oral agreement to hold in trust land conveyed by a deed absolute in its terms the evidence must be clear, strong and convincing. Cooksey v. Tolliver, 208 Ky. 160, 270 S. W. 719; Webb et al. v. Webb et al., 200 Ky. 488, 255 S. W. 137; Roche v. Roche, 188 Ky. 327, 222 S. W. 86; Holtzclaw v. Wells, 166 Ky. 353, 179 S. W. 193; Potter v. Potter, 180 Ky. 370, 202 S. W. 872; Neel's Ex'rs v. Noland's Heirs, 166 Ky. 455, 179 S. W. 430; 65 C. J. 493.

The evidence in this case is far from being clear, strong and convincing—it leaves us with a decided feeling of uncertainty as to whether the oral agreement to reconvey was, or was not, made. This being true we are not warranted in affirming the finding of the chancellor that it was made since the rule requiring us to affirm the

654

chancellor's finding when we are left in doubt does not extend to the cases in which the evidence is required to be clear, strong and convincing to justify the granting of relief.

Thus, though it be assumed that the oral agreement to reconvey would have been sufficient to create a constructive trust, the evidence was not of the clear, strong and convincing character requisite to establish the existence of the oral agreement for this purpose.

Reversed, with direction to enter a judgment in conformity with this opinion.